MARIE BERG

*v.*

ARTHUR J. BALDWIN.

[Decided October 22d, 1914.]

1. On a bill for the specific performance of a contract by defendant's decedent to cancel a mortgage on complainant's property, to which complainant was not a party, but which she claimed was for her benefit, evidence—*Held* not to .establish the alleged contract.

2. On a bill for the specific performance of a contract by defendant's decedent to cancel a mortgage on complainant's property, to which she was not a party, where the husband of complainant was the substantially interested party and the only witness for complainant, and his testimony as to giving up certain letters to decedent as a consideration for the contract was characterized by lack of candor and by subtlety, and his conduct savored of oppression, the doctrine that a court should not enforce a claim against a decedent's estate, supported only by evidence of the claimant, was applicable.

3. Specific performance will not be decreed of a contract to cancel a mortgage on complainant's realty, the consideration for which, so far as developed, was the surrender of certain letters to the deceased promisor, there being much mystery about the nature of the letters, and the possibility of their use, and suspicion of oppression in obtaining the promise, but complainant will be left to her remedy at law.

4. On a bill for the specific performance of a promise to cancel a mortgage, where the beneficial ownership was in a company, and it was not plain that, in making the alleged promise, decedent.was the agent of such company, his estate could not be required to specifically perform.

On final hearing.

*Mr. William E. Blackman,* for the complainant.

*Messrs. Magoffin & Signor,* for the defendant.

BACKES, V. C.

The complainant seeks the specific performance of a contract to which she was not a party, but which she claims was made for her benefit.

The bill alleges that the complainant was formerly the owner of a farm known as the Cleveland Farm, in Hopewell township, Mercer county, containing seventy acres (no other description), upon which there was a mortgage of $2,500; that she conveyed it to the Cleveland Farm and Dairy Company; that it was reconveyed to her; that she subsequently sold it, and that because of the existence of this mortgage she was obliged to allow the purchaser $1,350, with interest, out of the purchase price. The bill then alleges that during the ownership of the farm by the Cleveland Farm and Dairy Company, that company gave a bond for $1,350 to the defendant, as trustee for one Joseph D. Carroll, secured by a mortgage on the farm, and recorded in the Mercer county clerk's office (no date of mortgage or time and book of record given). The bill further sets up that while the property was owned by the complainant, the said Carroll promised

"upon consideration of an indebtedness owed by Fiss, Doerr & Carroll Horse Company [whatever that means], and in further consideration of the delivering to him by the complainant's husband of certain letters, that he would cancel the said mortgage or assign the same to the complainant; that the letters were delivered, but that the said Carroll did not keep his promise, and that he is now dead."

The bill prays that the defendant, trustee, be decreed to assign the mortgage or deliver the same to the complainant to be canceled.

The answer is a simple denial of the promise. At the hearing it was stated by the defendant that he held the mortgage in trust for the Fiss, Doerr & Carroll Horse Company, and acting upon this the complainant obtained an order making that company a party defendant, although no allegation appears by way of amendment showing its interest in the mortgage.

The company filed an answer denying the promise by Carroll.

The husband of the complainant was the only witness at the trial. From his testimony it appears that at the time of the alleged promise there was an investigation threatened, or under way, by the city of New York, of the dealings of the Fiss, Doerr & Carroll Horse Company with the city, and that the witness had some letters which he, presumably, obtained while associated with

the company, which were then of interest to Mr. Carroll in defending himself. The insinuation was that they were of an incriminating character. Whether so as to Mr. Carroll or other persons did not appear. The witness said he met Mr. Carroll by appointment in New York, and gave him five letters, which the latter put in his pocket, and in company with the witness went to Tammany Hall, and there, after a conference which Mr. Carroll had with someone, he stated to the witness that he wanted the letters, and the witness replied that he would not give them up, but that he would let him have copies; that they then went walking on towards Broadway, and Carroll said to the witness:

"Charlie, I tell you what I'll do, if you want to give me these letters. You bought a couple of horses of the company, and I will make a present of them if you will let me have them. I will not make any use of them unless I am personally attacked. You tell Mrs. Berg I am going to cancel that. mortgage."

The witness asked that this be put in writing, but Carroll refused to go on record. The witness said that he then left for Princeton. This was all the testimony relating to the alleged bargain. There was no cross-examination, and both parties rested on it. There was no argument, and at the conclusion of the trial I announced that the bill would be dismissed, stating briefly that the words attributed to Mr. Carroll, "You tell Mrs. Berg I am going to cancel that mortgage" did not constitute a promise—an agreement to cancel the mortgage, and that they were no more than a message which the witness was to carry to his wife. Now, that an appeal has been taken, I am called upon to express my views more fully.

The proposal which Mr. Carroll made to the complainant's husband (if made) was that if he would give up the letters, Carroll would give him a couple of horses which the witness had previously purchased from Mr. Carroll's company. Whether this was assented to by the witness, and whether he gave up the letters, was left to inference. He did not say that he agreed to it; all that he said was that he left for Princeton. The manner in which the witness told his story impressed me very strongly that the declaration of Mr. Carroll

to the witness, "You tell Mrs. Berg that I am going to cancel that mortgage," was not a part of the proposition. Its relation and connection with the proposition was not attempted to be shown, and from all that appears it may have been only a side remark, or made after the witness had accepted Mr. Carroll's offer to make him a present of the horses. It struck me at the hearing that if the remark was made, it was in the nature of a *douceur,* and not a part of the contract, if there was a contract. What Mortgage Carroll referred to the testimony leaves to conjecture. The bill disclosed that there were two mortgages on the farm, and the evidence is that the money which Mr. Carroll advanced for his mortgage was used to pay off a prior one. Whether the paid-off mortgage remained uncanceled at the time and in Mr. Carroll's possession; which of the mortgages he had in mind, or whether there was some other mortgage or transaction, was not made to appear. Even upon the assumption that as much as the witness told was literally true, the abstract and isolated declaration of Mr. Carroll that he was going to cancel the mortgage cannot, in the absence of proof satisfactorily demonstrating its meaning, be moulded into a promise—a legally enforceable contract.

Other circumstances which influenced my judgment were left unspoken at the conclusion of the hearing. The foremost of these concerns the credit and weight to be given to the testimony of the complainant's sole witness, her husband. The mystery about the letters; their contents; how they came into his possession; their usefulness to Mr. Carroll, and the use the witness could have made, or perhaps threatened to make of them, smattered very strongly of oppression at the time of the alleged promise. This, and the utter lack of candor in the conduct of the trial; the disinclination to exploit all of the facts, brought into the case such an atmosphere of subtlety that I could not regard the witness other than with suspicion. To all intents and purposes he was the complaining party and deeply interested in the outcome of the suit. He was striving for a stake, for which he had no living opponent. He feared no contradiction, because the tongue of his real adversary was silenced by death. While his

testimony was legally competent, I did not feel, under the circumstances, that I should accept it as true. It was absolutely devoid of corroboration by person or in circumstance, and I regarded myself as not justified in advising a decree depriving a decedent's estate of its property upon the naked and meagre words of this very much interested person. I have since examined the books and find this view is supported by authority. Taylor, in his work on *Evidence,* section 965, says:

> "It has sometimes been supposed that it is an absolute rule of law that a court cannot act on the unsupported testimony of any person in his own favour. But there is no actual rule of law to the effect suggested; though a court ought to regard a claim against a dead man's estate which is only supported by the evidence of the claimant with jealous suspicion, and neither itself act upon it nor allow a jury to do so without corroboration, and this irrespective of persons."

The doctrine is applicable, regarding, as I do, the witness as the substantially interested party in the cause.

Moreover, it may be added that the jurisdiction of a court of equity to decree a specific performance of a contract will not be exercised in a cause having such unfavorable features as this one presents; and the complainant will be left to her remedy at law. *King* v. *Morford, 1 N. J. Eq. 274.*

There is also this obstacle to a decree in favor of the complainant. The pleadings, as they are supposed to be amended, show the beneficial ownership in the mortgage to be in the Fiss, Doerr & Carroll Horse Company. It was not claimed that in the making of the alleged promise Mr. Carroll was acting as the agent of this company, and if we should assume that he made a contract binding upon himself, the ownership of the property not being in him, he or his estate could not be called upon to specifically perform. *Public Service Corporation* v. *Hackensack Meadows Co., 72 N. J. Eq. 285; Clark* v. *New Jersey Postal Telegraph Co., 82 N. J. Eq. 15.*