The bill in this cause was filed by John P. Wright, individually and as executor of the last will and testament of Robert Wright, deceased, and by William R. Wright, individually, against Victoria G. Sanger to have the court adjudge the right, title and interest of the respective parties in and to twenty-five Essex county park bonds of the par value of $1,000 each, and to advise the executors as to their duties and obligations in the premises. The matter was heard by former Vice-Chancellor Griffin, and has been referred to me.
The complainants are residuary legatees of the aforesaid decedent. The defendant is a co-executor with the complainant John P. Wright of the decedent's last will and testament. She claims ownership of the bonds in question as her individual property and bases her right thereto on a gift inter vivos. Her counsel urges: "We contend that the transaction was a gift intervivos, and that all the circumstances point to the intention of the decedent to make these bonds an absolute gift to Mrs. Sanger without any restriction or limitation."
It appears from the deposition of the defendant, given in inheritance tax proceedings (which by stipulation was received in evidence in this cause as Exhibit D. 3), that the bonds in question came to the defendant's possession several years prior to the death of the decedent, under circumstances which, in my opinion, disprove her claim that it was the intention of the decedent to make an absolute gift thereof to her without any restriction or limitation.
Robert Wright, at the time of his death, January 9th, 1924, was seventy-four years of age and possessed of considerable financial means. By paragraphs 2, 3, 4 and 5 of *Page 206 
his last will and testament, which bears date May 12th, 1919, he made substantial provision for the defendant. Paragraph 2 gives her the lands and premises No. 21 Ridge street, Orange, New Jersey, for the term of her natural life. Paragraph 3 gives her the income from a trust fund of $75,000 for the term of her natural life. Paragraph 4 gives her his household furniture, in case she survived him, and in case she predeceased him, he gave same to complainant John P. Wright, his nephew. Paragraph 5 gives her the sum of $20,000 outright.
The decedent for a number of years prior to his death was a confirmed invalid. John P. Wright testified that "for eight years prior to his death — eight or nine years — he was a confirmed invalid, not bedridden, but suffering from Bright's disease and heart trouble, and he had had a stroke." The defendant (in her deposition aforesaid), in reply to a question as to whether decedent was an invalid during the last ten years of his life, said, "Yes, I would say he was a semi-invalid, couldn't attend to his business."
The proofs disclose that a confidential relation existed between the defendant and the decedent for a period of over twenty years preceding his death. She resided with him in his home, acting as housekeeper, and attending to considerable of his business affairs, for a considerable period of time prior to his death. The decedent furnished to the defendant the moneys necessary to maintain the home. The defendant was aware of the provision made for her by the decedent's last will and testament. In her aforesaid deposition she declared that several years before the decedent's death he manifested concern as to what would happen to her if he was put in a sanitarium, and was fearful that in such event she would have no income with which to support herself. She says a conference was arranged with Lawyer Charles Lighthipe, to whom, in her presence, decedent made known his fear that the Bright's disease from which he suffered was liable to result in his insanity and might necessitate his being put away in an institution. She says the decedent told Mr. Lighthipe what he thought he wanted to do, if anything happened to him, in order to *Page 207 
provide an income for the defendant, and Mr. Lighthipe suggested to him that he give defendant some bonds to cover the amount he wanted to give her, and that the decedent visit Mr. Lighthipe's office the following morning, and talk the matter over. The defendant says that on the following morning she accompanied the decedent to the latter's safe-deposit box, from which he took the bonds in question, and together they went to Mr. Lighthipe's office where they spoke about some security being drawn up so that if anything happened to defendant, if she should die first, she would return the bonds to the decedent, and Mr. Lghthipe then said he would draw up a legal document to assure that if anything happened to the defendant the bonds would go back to the decedent, who then said, "Well, I think that would be the right thing to do, Charlie." The defendant says he then said to the decedent, "How would it do if I made a will and willed the bonds back to you?" and Mr. Lighthipe then remarked that the defendant should make a will providing that if she died before the decedent the bonds would go back to him. The defendant says, "I agreed to make a will returning the bonds to him if I went before he did, and then he gave the bonds to me and they were my bonds as long as I lived, and if I should die first, they were to go back to him, and if he should die they were my bonds." She says she made a will to effectuate such agreement, but when interrogated in the tax proceedings aforesaid in regard thereto she refused, upon the advice of her counsel, to say what had become of said will, or whether it was still in existence. The defendant also stated, in her deposition aforesaid, "In case Mr. Wright should be put in a sanitarium, or should die, he wanted me to have something."
Mr. Lighthipe, in a deposition made by him in the inheritance tax proceedings aforesaid (which, by stipulation, was received in evidence in this cause as Exhibit D. 4), says the decedent told him on the occasion of the conference first above mentioned, that the doctor informed him he had Bright's disease and it was liable to result in insanity, which would necessitate his being put away in an institution; that he had been told that a person with that disease *Page 208 
and with his physical condition might live to an old age, "and he wanted to place some bonds in Mrs. Sanger's name which would be a provision for her during the time that he might be in the institution, until he died," and, "I don't think she has anything, got anything to take care of her if such a thing should happen, and I want to give her these bonds so that she will not be in want during that time if I am put away."
Mr. Lighthipe denied drawing a will for the defendant on the day the bonds were delivered to her, thus refuting the statement of the defendant in this regard. His attention having been called to the defendant's statement that her will was drawn up by him on the day of the delivery of the bonds to her by the decedent, he said, "Her will — well, Mrs. Sanger is wrong."
The testimony of the defendant and of Mr. Lighthipe as to what transpired in the latter's office on the occasion when the bonds are alleged to have been given to the defendant varies materially. Mr. Lighthipe does not corroborate the defendant in details which might tend to substantiate her statement as to what occurred at the time of the delivery of the bonds to her. The defendant apparently relied upon Mr. Lighthipe to substantiate her claim of gift inter vivos of the bonds in question. The circumstances under which the bonds were delivered to the defendant and the conversation between the defendant, the decedent and Mr. Charles Lighthipe, at the time of the transaction and precedent thereto, forming part thereof, are strongly indicative that an absolute gift to the defendant without restriction or limitation was never contemplated nor intended by the decedent. Wigm. Ev. (2d ed.) § 1777 subdiv.3. The whole of what was said at the time of the transaction must be taken together to ascertain the decedent's intention. 28C.J. 675. Admissions by the defendant inconsistent with the claim of gift asserted by her are competent. 28 C.J. 676, 682.
The testimony of the complainants John P. Wright and William H. Wright, and of Frank W. Hastings, a solicitor of this court, as to statements made to them by the defendant with reference to the bonds in question and as to the circumstances *Page 209 
under which she obtained possession thereof, is strongly indicative that the decedent never contemplated making an absolute gift of said bonds to the defendant. Their testimony, based on statements made to them by the defendant, evidences that the bonds in question were delivered to the defendant by the decedent with the express understanding between her and the decedent that they were to be held by her merely for the purpose of assuring to her an income during her lifetime in the event that the decedent became insane and was confined in a sanitarium or other institution for the care and treatment of insane persons. The testimony of said witnesses also evidences that the defendant informed them that she, at the decedent's request, agreed to make her will and provide therein that if she predeceased the decedent the bonds were to go back to him, and if she survived him, the bonds, at her death, were to be returned to the decedent's estate. The testimony of Mr. Hastings evidences that the defendant stated to him that the decedent had been brooding over his condition, and was fearful that he might be confined in a sanitarium or asylum, and wanted to make provision for the care of the defendant if any such thing would happen, and asked her to arrange the matter by some kind of a paper to effectuate an understanding that she was to have the bonds in her possession, and, if she died before the decedent, the bonds should be returned to him, and if she survived the decedent she was to have the income from the bonds during her life, and after her death the bonds were to go to the nephews of the decedent (the complainants). He testified also that the defendant said to him that she had a will drawn to carry out such understanding and agreement.
Neither the defendant nor Mr. Charles Lighthipe testified in this cause; consequently, the defendant was not subjected to cross-examination as to the testimony she gave in the tax proceedings aforesaid. She evidently was content to rely upon her possession of the bonds and the effect which might be given to the depositions of herself and Mr. Lighthipe hereinabove referred to. *Page 210 
The testimony of the complainants and Mr. Hastings remains uncontroverted — except in so far as it may be said to be in anywise controverted by the aforesaid depositions of the defendant and Mr. Lighthipe.
The evidence to substantiate the defendant's claim should be so cogent as to leave no doubt in the mind of an unbiased person.28 C.J. 681 § 86 (5). If the statements made by the defendant in her deposition aforesaid are to be considered as truly manifesting the circumstances attending the transaction between herself and the decedent, it is clear that the bonds in question were entrusted to her by the decedent conditionally for the purpose to which I have hereinabove alluded, as testified to by the defendant and Mr. Lighthipe, and as admitted by the defendant to the complainants and Mr. Hastings. A gift first asserted after the death of a donor, as in this case, must be regarded with suspicion, and the rule of law requiring gifts to be established by clear and convincing evidence, applicable in such cases, is particularly applicable in this case, where a confidential relation existed between the decedent and the defendant. 28 C.J. 681 § 86 (5). See, also, In reO'Connell, 53 N.Y. Supp. 748.
The naked and uncorroborated testimony of the defendant as to the alleged gift (the testimony of Mr. Charles Lighthipe varying as it does from the testimony of the defendant in essential particulars, and refuting her testimony, in part, thus minimizing the import thereof) is insufficient to sustain the defendant's claim against the estate of the decedent. Berg v. Baldwin,84 N.J. Eq. 90; affirmed, Ibid. 193 (quoting on pp. 94, 95, fromTayl. Ev. § 965); Heyer v. Sullivan, 88 N.J. Eq. 165.
Where, as in this case, bonds are delivered on agreement that in event the donee should predecease the donor the bonds revert to the donor, there cannot be said to be a valid gift (28 C.J.646); and where conditions attach to the gift, such as established in this case, the gift is thereby rendered void. 28C.J. 646.
In Meyers v. Meyers, 134 Atl. Rep. 95, it is said to be essential to the validity of a gift of personal property that *Page 211 
the donor deliver the subject-matter to the donee, with intent to make a gift and part with all dominion and control over it.
In Mullen v. Mullins, 130 Atl. Rep. 628, 629, it is said: "To establish a gift inter vivos, the following factors must appear — first, a donative intention on the part of the donor;second, delivery of the subject-matter of the gift in the manner in which delivery is most capable; third, the donor must strip himself of all ownership and dominion over the subject-matter of the gift." Citing Swayze v. Huntington,82 N.J. Eq. 127; affirmed, 83 N.J. Eq. 335.
The only donative intention of the decedent manifested by the proofs in this case is that which evidences that the bonds in question were entrusted to the defendant for a particular purpose, that is, to insure to the defendant the income to be derived therefrom in the event, and for such time as, the decedent might, during the defendant's lifetime, be confined in a sanitarium or other institution for the care and treatment of insane persons, or, at the utmost, during the lifetime of the defendant. Such delivery of the bonds as may be said to have been made by the decedent was qualified as aforesaid. It is clearly manifest from the proofs in the case, regarding same as most favorable to the defendant, that the bonds were delivered to her upon the conditions — first, that if she predeceased the decedent the bonds were to be returned to him; second, that if she survived the decedent the bonds should be hers as long as she lived; third, that she would make a will to effectuate the return of said bonds to the decedent, if she predeceased him — which latter condition, so far as the proofs disclose, was not complied with by her.
To substantiate the defendant's alleged claim of gift intervivos, the defendant must not only sustain the burden by evidence of such probative force as clearly establishes every element of a valid gift, but, as is said in Taylor v. Coriell,66 N.J. Eq. 262 (at p. 270): "To make a gift effective the evidence should show an intention on the part of the donor to divest himself of the possession of his property, and it should be inconsistent with any other intention." *Page 212 
The use of the words "in case Mr. Wright should be put in a sanitarium, or should die," and "which would be a provision for her during the time that he might be in the institution, until he died," and "in the event that Mr. Wright became insane and was confined in a sanitarium or other institution for the care and treatment of insane persons," and the like, attributed to the defendant by Mr. Lighthipe, the complainants and Mr. Hastings, are strongly indicative that the alleged gift was subject to such contingencies, and manifest that the decedent did not intend that which the defendant urges — "an absolute gift to her without restriction or limitation."
I conclude, from a consideration of all of the proofs submitted, that the decedent's purpose in delivering to the defendant the bonds in question was merely a matter of convenience to assure her of the income to be derived therefrom in the event that the deceased should become insane or otherwise incapacitated by the "Bright's disease" from which he suffered, and during such time that he might be confined in an asylum or other institution, when he would be disabled from providing for her; that the delivery thereof was conditional that the bonds, at her death, if she predeceased him, should be returned to him; and if the decedent predeceased her, the bonds should become part of the decedent's residuary estate, and the defendant was to assure the effectuation of such purpose by her last will and testament, which it was agreed she should make at the time of the delivery of the bonds to her, which latter condition was unfulfilled by her. Furthermore, as to the defendant's claim, as evidenced by the depositions aforesaid, that she was to make a will to assure the return of the bonds to the decedent if she predeceased him, and they were to be her bonds as long as she lived, and "if he should die they were her bonds," and her attempt to claim ownership of the bonds by reason of the contingency last above mentioned is tantamount to an effort to circumvent the law of wills, and, therefore, nugatory. Such a gift as contemplated by the contingency last above mentioned is purely testamentary in its character, and, as *Page 213 
said in Stevenson v. Earl, 65 N.J. Eq. 721 (at p. 725): "To hold that such a method of disposing of property by the owner at his death is valid, would be to practically repeal the statute of wills, so far as its mandatory provisions are concerned."
It does not appear from the proofs in this case that the decedent became insane or otherwise incapacitated, or confined in an asylum or other institution; nor does it appear that any of the eventualities which the defendant's proofs indicate the decedent contemplated or feared ever resulted.
I am of the opinion, therefore, and do hereby adjudge that the defendant's claim of gift inter vivos of the bonds in question is untenable, that such alleged gift is void, and that said defendant has no right, title or interest in or to said bonds, other than as executrix of the estate of Robert Wright, deceased, and that, as such executrix, she should account for said bonds as part of the residuary estate of said decedent. I will advise a decree accordingly. *Page 214 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 215