In re estate of DENNIS J. FARRELL, deceased, appeal of
THERESA FARRELL.

[Decided April 1st, 1932.]

*Mr. Harry Heher;* for the appellant.

*Messrs. Lindabury, Steelman, Zink & Lafferty,* for the
respondent Otto S. Martin, executor of decedent.

*Mr. John A. Matthews,* for the respondents Margaret
Specht, James E. Specht and Mary Ann Specht.

BUCHANAN, VICE-ORDINARY.

Theresa Farrell, widow of decedent, and one of the re-
siduary legatees under his will, excepted to the account of
Otto S. Martin, executor, and appeals from the order of the
orphans court overruling the exceptions.

The first exception seeks to surcharge the accountant in
respect of the capital stock of the Trenton Dairy Company
held by decedent at his death—for which the executor charges
himself with $15,980.

By the will of decedent the executor was directed to
appoint three disinterested persons who should appraise the
stock in question, and report the appraisement in writing

to the executor. Option was given to James Specht and Margaret Specht (nephew and niece of testator) to purchase the stock at the appraised figure, and if such option were not exercised the executor was to sell the stock in such manner as he deemed advisable. The proceeds of sale in either event were to go to the *corpus* of decedent's estate.

The appraisers were appointed and appraised the stock (eighty-five shares at $188 per share) at $15,980, and so reported. The nephew and niece exercised the option, took the stock and paid the executor the $15,980—the figure charged in his account.

Appellant contends that the valuation fixed by the appraisers was only about half the actual value of the stock; the exception charges that the true value was at least $30,000; that the appraisers "unlawfully rejected certain elements of value" in making the appraisement; that the executor should be charged with the $30,000 instead of $15,980.

Admittedly the appraisers in arriving at the value of the stock, allowed nothing for any asset of the company in the way of good will. Appellant contends that the testimony taken on the hearing on the exceptions proves that the corporation did have an asset of good will, and that it therefore should have been taken into account by the appraisers in the fixing of the valuation.

It may be assumed for the sake of the argument that this contention is sound—that if the valuation had been required to be made by this court, the element of good will would have been considered and the appraisal made at the figure urged by appellant. Nevertheless that constitutes no sufficient ground for the allowance of the exception in this behalf.

The exception, in effect, is a charge of error in the correctness of the judgment of the appraisers; it seeks to subject that judgment to review by the orphans court. No authority therefor is to be found in the will, or in the law of this state.

The testator had the right to authorize the executor to sell the stock to the nephew and niece for one dollar, if he saw fit. Instead he directed the sale at such figure as should be fixed

by the appraisers. That figure is final and controlling, under the provisions of the will, in the absence of fraud. The will provides for no appeal therefrom nor review thereof. Neither the orphans court nor this court has any power to alter the will—to vary the testator's expressed and valid provision—by attempting to superimpose its judgment upon the judgment of the appraisers.

Assuming (but by no means deciding) that the appraisal might be challenged for fraud, by exception to the account instead of by bill to set aside the appraisal—the exception in no wise charges fraud. Moreover the proofs would not substantiate such a charge if it had been made. They show that the question, as to whether an allowance should have been made for good will, was at the least a debatable question, and that the appraisers considered it and decided against such allowance. From their judgment the testator provided no appeal, and no review thereof can be made by the court in the absence of fraud.

The decree below will be affirmed on this point.

The second exception seeks to charge the accountant with the sum of $7,433.09, and interest, on deposit in bank "to the credit of decedent in trust for Margaret Specht." The third and fourth exceptions are similar, with respect to two other similar accounts.

The evidence shows that the "Margaret" account was opened by decedent in July, 1923, with a deposit of $6,000, in the name of decedent "in trust for Margaret Specht." Two weeks later he deposited an additional $1,000. At his death, about May 1st, 1925, the aggregate principal and interest credited in the account was $7,733.37. No withdrawals had been made, and no other deposits. The bank book remained in testator's possession up to his death.

The executor withdrew the balance, after testator's death, and paid it over to Margaret Specht—presumably believing she was entitled to it. No other warrant or authority for his act is shown. If she was not entitled to it, the executor should of course be surcharged.

The claim of Margaret Specht to this chose in action must

rest on the theory of a gift *inter vivos* or on the theory of a valid and complete declaration of trust. Clearly there was no gift *inter vivos:* there was no delivery and no stripping of the donor of dominion over the subject-matter, both of which—at least to the extent possible or practical—are necessary for a valid gift *inter vivos. Reiley* v. *Fulper, 93 N. J. Eq. 112; Besson* v. *Stevens, 94 N. J. Eq. 549.*

This is not controverted by respondents: the claim made by their brief is that there was a valid declaration of trust.

If a trust was in fact declared, neither delivery of the subject-matter, nor of the trust agreement, nor notice to the *cestui,* was requisite for its validity. *West Jersey Trust Co.* v. *Read, 109 N. J. Eq. 475* (at *p. 477*), and cases cited. The question here is whether a trust was declared. The mere opening of an account by decedent in his name "in trust for Margaret Specht," is not sufficient, without more, to establish the declaration of a presently effective trust. "There must be some unequivocal act or declaration clearly showing that an absolute gift or trust was intended." *Nicklas* v. *Parker, 69 N. J. Eq. 743; affirmed, 71 N. J. Eq. 777.*

This, too, is conceded by respondents; but they contend that there is sufficient additional evidence in the instant case to establish that testator intended to make a presently effective declaration of trust. The only additional evidence is (1) the testimony of the executor that he knew of the existence of the account in question, prior to testator's death; (2) the testimony of Margaret Specht that she knew of the existence of the account prior to testator's death; (3) her testimony that she was present with the testator, at his request, at the time he opened the account, and that he said a that time that "he was going to put money in trust for me in the bank;" and (4) the testimony of Alfred Van Horn. As to (1) and (2) it is obvious that they in no wise tend to establish that the intent of the testator was to declare a presently effective trust. Nothing is shown as to how the witnesses knew of the existence of the account. As to (3), it must be deemed equally valueless when there is considered

the interest of the witness, and the fact that on a previous hearing she had twice testified flatly that she was *not* present at the opening of the account.

The testimony of Van Horn was different and at greater length. He was a friend or acquaintance of testator for some twenty-five years; he says that in the summer of 1924 testator in the course of a conversation with him said that "he had made a deposit in three different banks of $5,000 each for Maggie, Jim and his sister." (Maggie is Margaret Specht.) "He said he created a trust fund there for them and if anything happened to him that was there for them." Asked what decedent said as to why he was providing for three people, the witness testified that decedent said, "in case anything happened to him, that was all, why Jimmie and Maggie would get what was coming to them."

The evidence shows there was two other similar accounts, one in trust for James Specht, opened in February, 1924, and one in trust for the sister, Mary Ann Specht, opened in December, 1922. (These are the subjects of the third and fourth exceptions.) All three of the *"cestuis"* were of full age when the accounts were opened.

The pass books show that not one of the three accounts was opened with an initial deposit of $5,000; that at the time of the supposed conversation with Van Horn, instead of there being $5,000 in each of three accounts, there had been deposited in the "James" account, $6,000—in the "Margaret" account, $7,000—in the "Mary Ann" account only $2,500.

The credibility of Van Horn is in no wise attacked; presumably he was honestly giving his best recollection. The facts, however, show an additional instance justifying the view expressed in *Smith* v. *Burnet, 35 N. J. Eq. 314,* that the testimony even of third persons, as to declarations by a decedent, must needs be scrutinized and weighed with great care.

The pass books also show that deposits in the "Mary Ann" account were made in odd amounts; and that there was a withdrawal of $3,000 from the "James" account in Novem-

ber of 1924. Respondent's brief admits that this withdrawal was by the testator for his own use; the brief further states that the evidence shows that testator asked and obtained permission from James Specht to make this withdrawal temporarily—but there is no such evidence in the record. The pass book shows a deposit of $2,035 in April, 1925, and another of $1,500 in June, 1925.

The pass books of the "James" and "Mary Ann" accounts also remained in testator's possession until his death; and the executor turned over the balances to the respective "cestuis," as in the case of the "Margaret" account.

The inventory of the estate shows that testator had only some $1,200 in household and personal effects, in addition to the Trenton Dairy Company stock hereinbefore mentioned; the account adds a few other items but none of securities, investments or cash, except about $100 in a Christmas fund account, $200 in a Trenton bank, $100 "interest on account" in the Belleville bank, and $400 cash on decedent's person—a total of about $900. From all this it seems very unlikely that decedent intended or considered that the $20,000 cash on deposit in the three savings accounts in question, was in no wise a part of his own assets, or that he had divested himself complely of beneficial interest therein in favor of the three "cestuis." There can be little if any doubt in a disinterested mind, that if the "cestuis" or any of them, had said to decedent before his death, "you have made this trust for me; it is a mere naked trust; I am of age and I want you to turn it over to me at once," the testator would have vigorously dissented, and resisted any effort to enforce the so-called trust.

On the contrary, considering all these facts in connection with the testimony of Van Horn, it seems probable, if not indeed certain, that the testator made the three deposits not with the intent of creating presently effective trusts, but with the intent of depositing his own funds, to remain subject to his own control and use, if he so wished, but in such a way as would transfer the title to such respective amounts as

might then be there, to the *"cestuis"* respectively, at the time of his death. In other words his intent was to make a testamentary disposition and not a present trust. As testamentary dispositions they are of course invalid, under the statute.

It results that the second, third and fourth exceptions should have been sustained; and the decree below will be reversed in that behalf.

Each party being in part successful, there will be no costs to either side.