SARAH SANDERSON, a lunatic, who sues by Peter P. Artaserse, her guardian, complainant,

*v.*

LILLIE F. HOWELL, defendant.

[Decided January 9th, 1936.]

Mr. *Louis Bort,* for the complainant.

Messrs. *Minturn & Weinberger,* for the defendant.

EGAN, V. C.

The complainant, Sarah Sanderson, a lunatic, sues by Peter P. Artaserse, her guardian, to recover certain bank accounts alleged to be owned by the ward and withdrawn from the banks by the defendant who is her niece. One of the accounts was in the Lincoln Trust Company of Jersey City, which company afterwards merged with the First National Bank of Jersey City. On November 23d, 1928, that account stood in the name of Sarah Sanderson. On the day last mentioned, or on the 26th day of November, 1928, the money in that account was withdrawn and was deposited in the Lincoln Trust Company of Jersey City, Bergen Square Branch, in a new savings account in the name of "Lillie F. Howell or Sarah Sanderson." The ward, subsequently, made

several deposits to this account. There was a withdrawal from it by her on July 3d, 1929, of $32.04. On December 28th, 1933, the account amounted to $2,027.13. On the last mentioned date, the defendant withdrew this amount from the account and closed it. On the same day, she deposited the same amount, $2,027.13, in her own name, in the Bergen Square Branch of the Lincoln Trust Company. On January 8th, 1934, she withdrew this sum from the trust company and closed the account. She still retains the money.

On October 11th, 1922, the ward, Sarah Sanderson, and her husband, Charles H. Sanderson, now deceased, had an account in their joint names, in the Trust Company of New Jersey, Bergen and Lafayette Branch. On November 23d, 1928, that account was changed to Sarah Sanderson and Lillie F. Howell, the defendant. The signature card of the trust company states that the money belonged to the depositors as joint tenants, either and the survivor to draw. On December 28th, 1933, the defendant withdrew $1,000 from this account; and on, or about, January 5th, 1934, she withdrew the balance in the account, or the sum of $2,349.24, and, thereupon, closed the account.

The ward is now of the age of eighty-two, or eighty-three, years. For years, she lived alone, in an apartment in a two-family house on Belmont avenue, Jersey City. The apartment had no "improvements;" light was furnished by lamps or candles. The evidence indicated that Mrs. Sanderson's house was continuously untidy, disordered and dirty. Her personal appearance was unclean. She had no children. She was frequently visited by the defendant and by other nieces— Edna Durkin and Mabel Ammerman, respectively, who testified.

In the latter part of the year 1933, Mrs. Sanderson met with an accident and was removed to a hospital. The bank books, representing the accounts above stated, had been kept by her in a tin box in her apartment. Immediately upon her removal to the hospital, the books representing the bank accounts, as well as other bank books showing joint accounts that had been opened by Mrs. Sanderson in her name and that of her niece, Edna Durkin, were removed by the defend-

ant and by Miss Durkin. The books showing the accounts with the defendant's name were taken by her, while the books showing the accounts in the name of Edna Durkin were taken by Miss Durkin. Both of these ladies testified that they took the books because they felt they could withdraw money from the accounts "to use for Mrs. Sanderson," as occasion required. The books taken by the defendant have never been returned to Mrs. Sanderson or to the complainant; the defendant still retains them. The complainant herein made demands upon the defendant, and upon Miss Durkin, for the return of the bank books. Miss Durkin returned the book she had taken to the complainant Peter P. Artaserse. The defendant refused to turn over the bank books which she had taken. She testified that she had never deposited any of her own money in these accounts; and that she had the Lincoln Trust Company book for a year prior to the time that Mrs. Sanderson had been taken sick.

Regardless of the ward's competency, did she give, or intend to give, her bank accounts, or donate an interest in them to the defendant? The testimony indicates that she did not. There is no evidence that Mrs. Sanderson, at any time, gave, or delivered, her bank books to the defendant. The defendant said that she held one of the books showing an account in their joint names for a year prior to Mrs. Sanderson's removal to the hospital. That fact, in itself, does not establish a gift. We are without the benefit of the ward's testimony; she is, of course, not competent to testify. I am satisfied the ward had her bank accounts changed to joint accounts with the defendant just as a matter of convenience— she needed the aid and assistance of the defendant to withdraw money from the bank for her (the ward's) use. *Wright v. Sanger, 101 N. J. Eq. 203; 137 Atl. Rep. 657.* It seems hardly necessary to cite cases indicating the defendant's want of title to the accounts. In *Reeves v. Reeves, 102 N. J. Eq. 436; 141 Atl. Rep. 175,* the principle is laid down that "to sustain a gift *inter vivos,* there must not only be a donative intention, but also a complete surrender by the donor of all control over the thing given." The evidence shows no surrender of interest by the ward.

It is apparent that there was a relationship of trust and confidence existing between the ward and her niece, the defendant. *Wright* v. *Sanger, supra; Christian, Admx.,* v. *Canfield,* 108 *N. J. Eq.* 547; 155 *Atl. Rep.* 788; *Kelly* v. *Kelly,* 107 *N. J. Eq.* 483; 153 *Atl. Rep.* 384. The burden of proof to establish an alleged gift is on the donee, and both delivery and donative intent must clearly appear. *Madison Trust Co.* v. *Allen,* 105 *N. J. Eq.* 230; 147 *Atl. Rep.* 546.

The defendant did not submit any corroborating evidence of the alleged gift. *Hudson Trust Co.* v. *Murphy,* 13 *N. J. Mis. R.* 375; 178 *Atl. Rep.* 366. In *Madison Trust Co.* v. *Allen, supra,* the principle was established that where the only witness to an alleged gift is the wife of the donee, it is proper to consider the surrounding circumstances, personal interest and the actions of the claimant at, or immediately subsequent, to the time of the alleged gift. Bearing in mind the evidence, considering all the circumstances and conditions surrounding this case, the personal interest of the defendant, her conduct toward the ward, the ward's advanced age, leads, in my opinion, to but one conclusion: a want of donative intent.

In *Johnson* v. *Savings Investment Co.,* 110 *N. J. Eq.* 466; 160 *Atl. Rep.* 371, the court, in effect, said that to establish a gift *inter vivos,* there must be a donative intention, actual delivery of the subject-matter, and a complete abandonment by the donor of all ownership. To the same effect is the principle laid down in *Kirkpatrick* v. *Kirkpatrick,* 106 *N. J. Eq.* 391; 151 *Atl. Rep.* 48; *First National Bank of Lyndhurst* v. *Rutherford Trust Co., Exr.,* 109 *N. J. Eq.* 265; 157 *Atl. Rep.* 142; *Trenton Savings Fund Society* v. *Byrnes et al.,* 110 *N. J. Eq.* 617; 160 *Atl. Rep.* 831; *In re Farrell,* 110 *N. J. Eq.* 260; 159 *Atl. Rep.* 617; *Parker* v. *Colonial Building and Loan Association,* 111 *N. J. Eq.* 49; 161 *Atl. Rep.* 353.

The defendant's own testimony clearly indicates that in her case the vital and necessary elements of a gift are lacking.

Under the circumstances, I shall advise a decree in accordance with the prayer for relief.