OF THE

## STATE OF NEW JERSEY.

## ON APPEAL FROM THE COURT OF CHANCERY. AND THE PREROGATIVE COURT.

| 65 721|
| e66 271|

### JUNE TERM, 1903.

————————

CHARLES R. STEVENSON, executor, appellant,

*v.*

ELLEN V. EARL, respondent.

[Filed October 3d, 1903.]

E., a depositor in the savings fund of the Pennsylvania Railroad Company, at the time of opening his account therein, directed the company to pay to his wife, in the event of his death, all deposits which should then be standing to his credit in the fund. This the company agreed to do.—*Held*, that the disposition thus made of the moneys remaining to E.'s credit at his death was testamentary in its character, and was invalid because not made in the manner prescribed by the statute of wills.

46　　　　　　　　　　　　　　[721]

On appeal from a decree entered on bill of interpleader filed by the Pennsylvania Railroad Company against Charles R. Stevenson, executor of Walter Earl, Jr., deceased, and Ellen V. Earl, his wife, on the opinion of Vice-Chancellor Grey, reported in *18 Dick. Ch. Rep. 634.*

*Mr. Thomas E. French,* for the appellant.

*Mr. William T. Boyle* and *Mr. John W. Wescott,.* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The Pennsylvania Railroad Company has established for its employes a depository known as "The Pennsylvania Railroad Employes' Saving Fund," in which any person in the employ of that company, or of certain other subsidiary companies controlled by it, may deposit his savings, subject to certain rules and regulations which have been formulated by the company for the management and control of this "fund." Only such employes may become depositors, and no employe may remain a depositor more than thirty days after his employment with the company is terminated, but must close his account within that period. One of the rules requires that an employe who desires to become a depositor must make application in writing, and must state therein, among other things, "the name and residence of the person to whom, in the event of death, his deposits and the accrued interest thereon shall be paid." Another rule provides that upon the presentation of satisfactory proof of the death of a depositor, "the money belonging to him shall be paid over to the person designated in his application to receive the same." Still another rule authorizes any depositor to withdraw, at his pleasure, all or any portion of his deposits, with the accrued interest thereon, upon ten days' notice to the superintendent of the fund.

In March, 1888, one Walter Earl, Jr., a locomotive engineer

in the employ of the company, made written application for permission to become a depositor in the company's saving fund, and in and by his application agreed to be bound by the rules and regulations under which it was managed, and particularly "that in the event of my death all deposits standing to my credit in said savings fund, and all interest due thereon, shall be paid to my wife." His application having been favorably acted upon, he opened an account with the fund by a deposit of $500. The pass-book, delivered to him by the company as his voucher for the amounts deposited by him, he gave to his wife, stating to her that here was the money, and that if he died it should go to her, and that she could get it in ten days by giving notice to the company. Subsequent to the opening of the account he increased the amount of his credit, from time to time, by additional deposits, so that, on the 1st of January, 1896, it amounted to $2,956. By the 12th of June of that year, however, he had drawn against it to such an extent that there remained to his credit only $56. By the 1st of November, 1900, the amount of his deposits, with interest, had so increased that there stood to his credit the sum of $2,286. By the 1st of February, 1901, he had drawn it down to $1,578. On the 21st of that month he died, leaving the last-named amount standing to his credit in the fund. About two months prior to his death he had made and executed a last will and testament, in and by which he gave all of his estate, except a small legacy, to his executor, upon certain trusts which were set forth in the instrument. Demand having been made upon the Pennsylvania Railroad Company, both by the wife and by the executor of the deceased, to be paid the balance standing to his credit on the books of the savings fund, that company filed its bill of interpleader against them, and deposited the fund in the court of chancery. The parties having interpleaded in that court, it was adjudged and decreed upon final hearing that the legal title to the fund was in the widow. The appeal now before us is taken by the executor from that decree.

The learned vice-chancellor who heard the cause in the court below concluded, from the facts which have been recited, that

there was a distinct donative purpose on the part of the husband towards the wife covering this fund, and that, as a matter of law, the effect of his agreement with the company was to impress the subject-matter of this donative purpose with a trust whose terms were defined by the printed regulations that constituted the agreement between the donor and the company, including both the withdrawal of sums by the settlor of the trust during his lifetime and the payment to his widow of any balance that might at his death stand to the credit of his account.

Although we concur in the view that, on the facts set forth, a clear donative purpose appears on the part of the deceased towards his wife, we cannot agree that it covered the whole amount of the deposits made by him.  On the contrary, it seems to us to be so plain as to be beyond the shadow of a doubt that he intended to retain the absolute control and ownership of all moneys which were deposited by him and to deal with them on that basis, during his life; and that his donative purpose toward his wife was confined solely to such balance, if any, as should remain to his credit at his death.  Nor can we accede to the proposition that the agreement between the husband and the company is, in effect, a declaration of trust by the former in favor of his wife.  As was said by Vice-Chancellor Bacon, in *Warriner* v. *Rogers, L. R. 16 Eq. Cas. 348,* and repeated by Sir George Jessel, master of the rolls, in *Richards* v. *Delbridge, L. R. 18 Eq. Cas. 13,* "the one thing necessary to give validity to a declaration of trust—the indispensable thing— I take to be that the donor or grantor, or whatever he may be called, should have absolutely parted with that interest which had been his up to the time of the declaration; should have effectively changed his right in that respect, and put the property out of his power, at least in the way of interest." Instead of the agreement showing that, by force of it, the husband had parted with his interest in the funds then deposited, and thereafter to be deposited, by him—that he had put them out of his power, so far as any interest of his own was concerned— it, in terms, preserves to him the absolute right of dealing with and disposing of them solely for his own benefit.  And that he

Stevenson *v.* Earl.

exercised this right to its fullest extent is shown by his dealings with the deposits, as set forth in the statement of facts above recited.

If the right of the wife to the fund in dispute is to be sustained at all, it must be because the donative purpose of the deceased toward her, with relation to such balance of his deposits as should remain to his credit at his death, was rendered effective by the agreement entered into between himself and the company, coupled with the delivery by him to her of the pass-book which he had received from the company as a voucher; in other words, because that agreement, and the delivery of the pass-book, constituted a valid gift *inter vivos*. But, in order to legalize such a gift, there must be not only a donative intention, but also, in, conjunction with it, a complete stripping of the donor of all dominion or control over the thing given. *Cook* v. *Lum, 26. Vr. 375, 376.* As was said in the case cited, this is the crucial test, and if it be applied to the present case the gift is not to be sustained; for, neither by force of his contract with the company nor by the delivery of the pass-book, did he intend to, nor did he in fact, part with his complete dominion over any part of the moneys deposited by him.

The expressed intention of the deceased was only to bestow upon his wife so much of his deposit as should remain undrawn by him at his death. Such a gift, it seems to us, is purely testamentary in its character. If it is not, then it is a perfectly easy thing for a person to retain the absolute control and dominion over his moneys and personal securities during his life and transfer that dominion to another at his death, with total disregard of the requirements contained in the statute of wills, by the simple device of depositing such moneys and securities, under an agreement with the depositary that he shall have the right to use them or deal with them as he pleases during his life, and that at his death so much of them as may remain shall be delivered to such person as is named in the agreement, who shall then become the owner thereof, and then delivering the agreement to the beneficiary with a statement of the same purport as that made by the deceased to his wife when he gave the

pass-book to her. To hold that such ·a method of disposing of property by the owner at his death is valid, would be to practically repeal the statute of wills in its operation upon personal property, so far as its mandatory provisions are concerned.

Our conclusion is that the moneys remaining to the credit of Earl, at his death, in the savings fund of the Pennsylvania Railroad Company, did not become the property of his wife, notwithstanding the provision in the agreement between him and the company that such moneys should be paid to her at his death, our reason for so concluding being that such agreement constituted a testamentary disposition of his property, which was invalid because not made in the manner prescribed by the statute of wills. The necessary result of this conclusion is that such moneys passed to his executor, on his death, as part of his estate.

The decree appealed from should be reversed.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM—11.

*For affirmance*—None.