BENJAMIN C. GREGORY

*v.*

LILLIAN L. GREGORY.

[Filed June 7th, 1904.]

1. The purpose of the legislation permitting the appointment of vice-chancellors to hear matters and causes referred to them and advise the chancellor what decree should be made therein, was to enable the court of chancery to dispose of its business, which had become too great to be disposed of by the chancellor alone.

2. Since that purpose could not be effectuated if the chancellor was required to review a vice-chancellor's acts and his report and advice thereon in all cases, on demand of a party, it was the plain intent to permit the chancellor, in all ordinary cases, to decline to make such review, and to leave the objecting party to obtain relief by appeal.

. 3. Yet there may be cases in which it is the duty of the chancellor not to refuse such a review, but to exercise his power to make the decrees of the court as, *e. g.*, when necessary to prevent discordant adjudications, or to prevent an injury resulting from a refusal of a rehearing, when such injury cannot be redressed upon an appeal.

4. A petition for divorce on the ground of adultery was met by an answer denying the charge, with a cross-petition for divorce on the ground of desertion, which was met by an answer denying desertion. The cause was referred to a vice-chancellor. He tried the issue made on the original petition first, and reached the conclusion that the charge therein made was proved, and he advised a decree thereon. A day had been fixed for the hearing of the issue on the cross-petition, but the conclusion upon the other issue had been announced before the arrival of that day. The cross-petitioner then moved the vice-chancellor to proceed to the trial of the other issue. This was practically a motion for rehearing. It was refused. —*Held*, that the circumstances disclose no injury which may not be relieved on an appeal and present no ground for the intervention of the chancellor.

On motion, &c.

*Mr. Jay Ten Eyck,* for the petitioner.

*Mr. Warren Dixon,* for the defendant.

MAGIE, CHANCELLOR.

Counsel for the defendant moves, upon notice and accompanying affidavits, for relief of various sorts. Briefly stated, he seeks to have the chancellor refrain from signing a decree advised by a vice-chancellor and direct the further trial of the issue presented in the cause before the same, or another vice-chancellor, or by the chancellor himself.

In order to an understanding of the cause and the conclusions I have reached, a brief statement of the pleadings and issues presented before the vice-chancellor who advised the decree seems necessary.

The petition filed by the petitioner sought a divorce from the defendant on the ground of adultery. The defendant filed an answer denying the adultery, but not setting up any other defence. She included with the answer what is called an answer by way of cross-bill.

Upon a bill of complaint in a suit for divorce a cross-bill may be included in the answer, and the cross-causes may be tried together, and the relief may be granted under the cross-bill. *Osborn* v. *Osborn, 44 N. J. Eq. (17 Stew.) 257; McGrail* v. *Mc-Grail, 51 N. J. Eq. (6 Dick.) 537: Harrison* v. *Harrison, 46*

*N. J. Eq.* (*1 Dick.*) *75; Rooney* v. *Rooney, 54 N. J. Eq.* (*9 Dick.*) *231.*

It would seem that a like practice may be resorted to in a cause in which the right to relief by a decree of divorce is presented by petition, because all suits for divorce in the court of chancery, by the provisions of section 7 of the Divorce act of 1902 (*P. L. of 1902 p. 504*), may be commenced by the filing of a petition. A suit thus commenced is then a suit in the court of chancery, and I can perceive no reason why a party cited and appearing may not present a defence and combine therewith a complaint against the petitioner in cases where such complaint might be presented by cross-bill in suits for divorce commenced by bill. Indeed, if a defendant filed an independent petition against the original petitioner for relief by a decree of divorce, I think it would be within the power, and would be the duty of the court, to consolidate the causes and try them together. It seems to me, therefore, that, without regard to what it is called in the defendant's answer, the pleading is in effect a cross-petition.

The cross-petition states (1) that the petitioner, at the time of his marriage with the defendant, was impotent and has so continued to the present time, and that his impotency is incurable; and (2) that the petitioner had deserted the defendant, and that such desertion had continued for a period of time sufficient to justify a decree of divorce. Notwithstanding these diverse statements, the prayer of the cross-petition was for a decree in favor of the defendant only upon the ground of the desertion alleged.

The petitioner filed an answer to the cross-petition, denying both of the charges contained therein. He also objected to the cross-petition, on the grounds (1) that it was included in the defendant's answer to the original petition, and (2) that it was multifarious, and he asks that both of these objections should be considered as if he had, for these reasons, demurred to the cross-petition.

In this state of the pleadings the cause was referred to a vice-chancellor and came to trial before him. It appears that, upon the case being called, petitioner's counsel moved to strike

out from the cross-petition the charge of impotence, and that the vice-chancellor, without objection from counsel, declared that he would not then decide the motion, but would hold it under advisement and afterward act thereon.

The vice-chancellor thereupon proceeded to try the issue raised by the original petition and the answer thereto. This course seems to have been taken without objection on the part of counsel. That issue was tried. Many witnesses were called and counsel were heard in summing up the evidence upon that issue. It also appears that a day was then fixed for taking testimony with respect to the issue presented by the cross-petition and the answer to that. Before that day arrived the vice-chancellor filed a memorandum, expressing his conclusion that, upon the evidence on the issue already tried, the defendant was guilty of adultery, as charged in the original petition, and advising a decree for divorce. However, he withheld the advice at the remonstrance of defendant's counsel, and permitted counsel for both sides to be heard, upon notice, with respect to whether he should proceed to try the issue which was left undisposed of, before presenting his advised decree. He declined to proceed further in the trial of that issue. His advised decree is now before me for signature.

The contention of defendant's counsel is that this course is irregular and tends to the injury of the defendant, which injury cannot be redressed by appeal.

This application and others of similar nature seem to require me to express my views upon the proper practice and the power and duty of the chancellor to intervene and to decline to act upon the advice of vice-chancellors.

The introduction of vice-chancellors into our system of chancery jurisprudence arose from legislation based on the ancient right of the chancellor to call upon the masters of his court for their advice as to his action in causes and proceedings pending before him. When that legislation was first adopted, the business of the court had outgrown the power of the chancellor to dispose of it alone. For the purpose of enabling the court to deal with the increasing business therein, the legislature gave authority to the chancellor to appoint an officer, to be called a vice-chan-

cellor, to whom he might refer causes for trial, and who might try the causes thus referred upon evidence orally taken, and was required to report to the chancellor his opinion and advise what decree should be made therein.  As the business of the court still further increased the legislature, with wise liberality, from time to time has authorized the appointment of additional vice-chancellors, and by this system the court of chancery has practically been enabled to keep pace with its business.  The utility of the system has been established in its existence of over thirty years, and its recognition by all departments of the state government, executive, legislative and judicial, has given it a sanction beyond dispute or question.

The legislation on this subject has not attempted to deprive, and it could not constitutionally deprive, the chancellor of his right to make the decrees of his court.  Obviously, however, the purpose of this legislation could not, at the time it was originally adopted, and certainly cannot now, be made effective and useful in conducting the business of the court if the chancellor should deem himself compelled to review the opinion and advice of every vice-chancellor in every case on the mere demand of a party thereto.  In all ordinary cases it is essential to the conduct of the business of the court that the chancellor should decline to revise the opinion of a vice-chancellor or to refuse to follow his advice, and this, in my judgment, was the plain intent of the legislation.  Parties may well, in such cases, be left to obtain relief by review of the decree by appeal.

Yet I deem it equally obvious that there are, or may be, exceptional cases in which it would be the duty of the chancellor to review the conclusions reached by a vice-chancellor and to consider whether or not his advice should be followed.  I can conceive of only two classes of such cases.  One class, I think, would be composed of cases in which the decree advised is based upon a principle, or the conclusion reached is by a course of practice in direct opposition to previous decisions of the chancellor or of some vice-chancellor whose advice has been acted upon by the chancellor.  .The obvious reason is that the court of chancery must speak with one voice and not discordantly.

Another class would be composed of certain cases in which a rehearing has been applied for. Before the introduction of vice-chancellors such an application was made directly to the chancellor and was dealt with by him on equitable principles, and the practice was regulated by rules of the court. Since vice-chancellors have been made trial judges, the practice on application for the rehearing of causes in which decrees have been signed on the advice of a vice-chancellor was pointed out by a rule of court, which was promulgated in 1871 and is now rule 148. This rule was construed by Chancellor Runyon in *Rusling, Administrator,* v. *Bray, 38 N. J. Eq. (11 Stew.) 398,* and held to require an application for rehearing in such cases to be made to the vice-chancellor who had advised the decree in all ordinary cases, and that such an application should be made to or entertained by the chancellor only in exceptional cases.

In *Swallow* v. *Swallow's Administrator, 27 N. J. Eq. (12 C. E. Gr.) 278,* the chancellor heard an application in a cause in which the decree had been advised by Vice-Chancellor Dodd, who had resigned. In *Rusling* v. *Bray, supra,* special reasons were held to justify the chancellor in hearing the application.

If it is made to appear to the chancellor that a rehearing has been practically denied by a vice-chancellor, and that such denial deprives a party of the opportunity of presenting the case on an issue made by the pleadings, and thereby produces an injury which cannot be relieved by an appeal, it would seem that the chancellor ought to intervene to the extent of protecting the objecting party from the consequence.

There may be other cases in which the chancellor ought to act, but I cannot discover any.

The cross-petition stated two grounds of complaint, but based its prayer for relief upon a single one of those grounds. On application it would have been proper to have permitted an amendment of the prayer and to have proceeded with the cause. Divorce act of 1902, section 15, *ubi supra.* Whether such an amendment would have enabled defendant's counsel to present the contention he desired to make may be doubtful. Perhaps an amendment of the answer to the original petition might have been required.

But if such amendments as were required had been applied for and allowed, it is obvious that two questions, both of which are novel and important, would have been presented, viz.:

*First.* Whether or not relief by a decree of divorce can be asked for in a petition upon two distinct and unconnected causes where the decree is identical, and this question would be raised by the answer in the nature of a demurrer of the petitioner; and

*Second.* Whether a decree for divorce based upon impotence is, under our revised Divorce act, a decree which avoids and nullifies the marriage *ab initio.* It is in respect to this latter question that defendant claims she was injured by the course of the trial. Her contention is that if she had been permitted to go to a trial upon her cross-petition, and had established the fact of such impotence as was alleged therein, there would have been no ground to dissolve the marriage for a matrimonial offence.

These important questions were never presented to the vice-chancellor so as to require his action thereon. No amendment was asked, and the vice-chancellor struck out the statements of the cross-petition on the motion of the petitioner's counsel, which he was justified in doing if they were superfluous, and presented no matter of fact on which the relief prayed for by the cross-petition could be founded.

The result is that I am unable to discover any injury to defendant in the course the trial took which may not be remedied on appeal. The conclusion of the vice-chancellor on the issue tried I will not review, but must assume that to be correct.

The issue presented by the cross-petition when the matter of impotence was excised was upon the charge of desertion. The relief obtainable under the original petition and the cross-petition was plainly identical, viz., the dissolution of the marriage tie.

Under such circumstances I can perceive no injury to the defendant in declining to hear and determine the sole issue presented by the cross-petition after trying and determining the issue presented by the original petition. It is suggested that it would be more convenient for the defendant, if she takes an appeal, to have both cases before the court of appeals at the

same time. This may be so, and both issues could have been tried together, as was done in *Osborn* v. *Osborn, ubi supra,* but I do not think that any inconvenience which may result is an injury to the defendant that may not be redressed by an appeal, for if the defendant appeals, and is successful, the cause will be remitted and the undisposed of issue will be tried.

The motion will be denied, and the decree advised will be signed.