Complainant, Clifford Thatcher, by his bill seeks to establish the existence of a trust in favor of complainant in two *Page 409 
certain bank balances remaining, at the death of Minnie G. Malsbury, standing to the credit of "Minnie G. Malsbury, in trust for Clifford Thatcher," on the books of the defendant Trust Co.
By the stipulation of facts filed in lieu of other proofs, it appears that one of these accounts was opened by decedent in the name aforesaid, in 1912; that she made deposits therein from time to time totaling (with interest accretions) $1,366.54 and withdrew therefrom $300 on April 21, 1917, and $700 on December 17, 1929, leaving $366.50 remaining at her death, April 29, 1934. The other account was similarly opened January 13, 1933, deposits were similarly made therein totaling $190.55, and withdrawals of $10 on February 3, 1933, $15 on February 7, 1933, $10 on March 16, 1933, and $20 on April 3, 1933, leaving $135.55 remaining at her death. Both were savings accounts.
"Complainant had knowledge of these accounts, which were opened for his benefit, which knowledge was transmitted to him during her life time by the said Minnie G. Malsbury, who was a great-aunt of complainant."
No other facts appear, — except that the defendant bank and the defendant administratrix of Minnie Malsbury deny the existence of any trust or other interest in the funds, in favor of complainant.
The primary question is whether or not a trust was in fact declared by the decedent as to these bank deposits. The burden is of course on complainant to establish this fact, by the satisfactory weight of evidence.
"The mere opening of an account by decedent, in his name `in trust for Margaret Specht' is not sufficient, without more, to establish the declaration of a presently effective trust. `There must be some unequivocal act or declaration clearly showing that an absolute gift or trust was intended.' Nicklas v. Parker,69 N.J. Eq. 743; affirmed, 71 N.J. Eq. 777."In re Farrell, 110 N.J. Eq. 260, at 263, 159 Atl. Rep. 617.
There is in the instant case no evidence of any such unequivocal act or declaration; no additional facts whatever, beyond the mere opening of the account in that way, in anywise tending to prove the declaration of a trust. The fact *Page 410 
that decedent "transmitted knowledge of these accounts" to complainant does not so tend; it is quite barren of evidential force one way or another as to decedent's intent. On the other hand the fact that she made withdrawals from these accounts, from time to time, — (presumably for her own use and benefit, since there is nothing to show otherwise), — is evidence tending to indicate that she had not intended to establish a presently effective trust. The factual situation in the instant case is much weaker even than in the Farrell case, supra, where it was held that no trust had been established.
Complainant relies on In re Totten, 179 N.Y. 112 and HudsonTrust Co. v. Holt, 115 N.J. Eq. 34, 169 Atl. Rep. 516. These cases involved bank deposits made in the State of New York, and the rights arising thereunder were determined under the law of New York, which is contrary to the law in this state, — all of which is clearly pointed out by Vice-Chancellor Fallon in HudsonTrust Co. v. Holt. Moreover, in the latter case there were adequate proofs of unequivocal acts and declarations clear and specific, both before and after the opening of the accounts, showing the intent to create a trust. In the present case there are no such proofs; and the deposits were made in this state, and the issues must be determined in accordance with the law of this state. The principles in force in this state were also set forth by the same vice-chancellor in Jefferson Trust Co. v. HobokenTrust Co., 107 N.J. Eq. 310, 152 Atl. Rep. 374.
Complainant however further contends that the law of this state in this behalf has been changed by a statute passed in 1932 —P.L. 1932, c. 40, p. 59. The act is entitled "An Act concerning trust deposits in savings banks, trust companies and banks where other than the deposit in trust no other or further notice is given in writing of the existence and terms of the trust." It was approved March 28, 1932, and by its terms was to take effect immediately. Apparently it has not hitherto been the subject of any judicial interpretation.
It consists of two sections, (plus a third section providing for separability in the event of attack on its validity). The first section reads as follows: *Page 411 
"1. Whenever any deposit shall be made with any savings bank, trust company or bank by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to the savings bank, trust company or bank, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, shall be paid to the person in trust for whom the said deposit was made, or to his or her legal representatives and the legal representatives of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee; provided, that the person for whom the deposit was made, if a minor, shall not draw the same during his or her minority without the written consent of the legal representatives of said trustee."
The second section is identical with the first, except for the commencement, which reads "Whenever any deposit shall have been made" instead of "shall be made."
(Mention may be made of the fact that there are three companion statutes, — chapters 41, 42 and 43 of the laws of 1932, whereby the same provisions are incorporated as amendments to the acts concerning banks, trust companies, and savings banks.)
Defendant argues that the purpose and intent of the act was simply to benefit and protect the depositaries. That interpretation was adjudged in Jefferson Trust Co. v. HobokenTrust Co., supra, in reference to the 1903 supplement to the Trust Company act, — P.L. 1903, c. 210, p. 446; 4 Comp. Stat. p.5666, § 32.
From a comparison of the language of the acts of 1903 and 1932, and consideration of the fact that the act of 1932 was enacted shortly after the decision in Jefferson Trust Co. v. HobokenTrust Co., supra, it may well be assumed that the purpose back of the 1932 act was to accomplish such a change in the law as to prevent in future such result as had been adjudicated in the last named case. The meaning and effect of a statute, however, must be determined on the basis of the language which has actually been used.
From a consideration of the adjudications in which those principles of law which the legislature now desired to alter had been set forth, — such as Stevenson v. Earl, 65 N.J. Eq. 721,55 Atl. Rep. 1091, and the several cases heretofore cited *Page 412 
herein, — it may well be concluded that in all probability it was the purpose of the legislature to provide that when moneys should be deposited in a bank or trust company in the name of, or to the credit of "A, (the depositor) in trust for B," without more, then in the absence of evidence establishing a different intent by the depositor, it will be presumed that the depositor thereby intended to create a trust in favor of B as to such bank credit which trust should become effective as to the beneficiary's right to possession and enjoyment, at and not until the death of the depositor, and should meanwhile be and remain revocable in whole or in part and from time to time at the will of the depositor; and further to provide that such a trust should be lawful and valid and should operate to transfer to B the beneficial ownership of said bank credit (subject to the right of the depositor to retake the same or any part thereof without notice to or consent by B) with the right to possession and enjoyment thereof postponed until the death of the depositor, — anything in the statute of wills or the statute of intestate succession to the contrary notwithstanding.
Or else it may have been the purpose of the legislature to provide that when moneys should be deposited in the manner above mentioned, then in the absence of evidence establishing a different intent on the part of the depositor, it will be presumed that the depositor thereby intended to make a testamentary disposition in favor of B as to the bank credit aforesaid: and further to provide that such a testamentary disposition should be lawful and valid and should operate to transfer to B. at and upon the death of the depositor, the complete ownership and title to the said bank credit or so much thereof as then remained, — anything in the statutes aforesaid to the contrary notwithstanding.
The trouble is that the legislature has not said either of those things, in the enactment which it passed. The draftsman of the act took the statute of 1903 hereinbefore referred to, which was intended to accomplish a very different purpose, — namely the mere protection of the depositary in making payment of such bank credits, — and utilized that statute as the basis for the drafting of the new act for the new purpose, *Page 413 
making such changes in its language as was thought would be sufficient to accomplish the desired purpose. But the frame of the 1903 statute was entirely unsuitable as a frame for a statute for the new purpose and the result obtained is a statute the language of which is confused, impractical and wholly unsatisfactory and difficult to comprehend.
Consideration of the first part of the act (down to the words "in the event of the death" c.), and giving to the words used their natural and ordinary meaning, would lead to the conclusion that the statute referred to, and was intended to apply to, instances where there had been created a valid trust in the bank credit. "Whenever any deposit shall be made * * * in trust for another," is the language used, — not "whenever any deposit shall be made to the credit of (or in the name of), one person in trust for another." A deposit is not in fact made in trust for another, (notwithstanding that it is made in the name of, or to the credit of, A in trust for B), unless a valid trust has been intended and created. That has been clearly pointed out in the prior cases cited. If that meaning is the one which must be ascribed to the language used, then we need not pursue the inquiry any further, — because obviously the statute does not refer to the case at bar. As has already been shown, no valid trust was created in the case at bar, — (unless as the result of this statute), — hence a statute which refers to and applies only to the instance where a valid trust has already been created, cannot affect the instant case.
The later phrase "notwithstanding that the funds so deposited may have been the property of the trustee," would tend to indicate, however, that the legislature was not referring to the instances where a valid trust had been created. The existence of a valid trust in property is incompatible with that property remaining the property of the trustee (as an individual). Let us assume then, — for the sake of argument only. — that the meaning which should be ascribed to the legislative language is "whenever a deposit shall be made in the name of, or to the credit of, one person in trust for another, although a valid trust was not thereby created and the bank credit remains the property of the depositor." Let *Page 414 
us further assume that the words "shall be paid to" and "shall not be entitled to," (although they are obviously inapt for such a purpose), are intended to mean, and may properly be construed as meaning, that "the ownership (of the bank deposit) shall pass from the depositor to the other person named in the title of the account." ("Trustee" is also a very inapt word to use to designate a person who is in fact not a trustee, and its repeated use in the act is a further indication that the statute refers only to cases where a trust was in fact created.)
We are confronted, nevertheless, with the fact that the statute does not say that "the bank deposit" or "the ownership of the bank deposit" shall so pass, — nor does it say "the bank deposit or so much thereof as shall remain to the credit of the account." That which it says shall so pass is "the same" (which means the bank deposit) "or any part thereof." What, then, passes? The whole deposit, or only a part? and, if only a part, what part? and how or by whom is it to be determined? Nothing is specified in this behalf, and there is no way of ascertaining. The whole provision therefore is ineffective.
It may well be surmised that what the legislature wished to say was "the bank deposit or such part of it as remains," — but they have not said so, and we cannot legislate for them.
Another reason why the cited statute is of no avail to complainant in the instant case is that by its terms the statute does not operate if some further written notice of the kind specified, has been given to the depositary. It applies only to a case where a "trust" deposit has been made "and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to the * * * bank." It nowhere appears in the case sub judice either by the pleadings or the stipulation of facts, that no such further written notice was given to the trust company.
Moreover, — suppose Mrs. Malsbury had, at the time of making this deposit, given to the trust company a written notice or declaration that by the deposit in question she intended to create, and was creating, a trust in favor of complainant operative as to possession and enjoyment at her death and in *Page 415 
the meantime revocable in whole or in part at her own option. This would be notice of the existence and terms of a trust, — but not of a valid trust, as has been heretofore shown. Hence the statute, by its terms, would not be operative. The result is that where a depositor wishes and intends to create such a trust, if he tells the bank in writing just what he wishes to do, his attempt will be futile, but if he does not give the bank that information, his attempt will be successful. It is difficult indeed to believe that the legislature purposed any such anomalous result; yet that is what they have said. Obviously the statute is unconstitutional, as creating an unreasonable classification and unjust discrimination in this behalf.
Again, — suppose that a depositor makes a deposit in his name in trust for another; that he gives no further or other written notice to the bank as to the existence and terms of a trust, but does execute and give to his intended trust beneficiaries a complete and valid declaration of trust, under the terms of which the beneficiary whose name is mentioned in the title of the bank deposit is made beneficiary under certain terms and conditions and others are the beneficiaries if those terms and conditions are not met. Suppose further that those terms and conditions are in fact not met. Under the provisions of this statute, the vested rights of the other beneficiaries under this valid trust are to be swept aside at the death of the depositor-trustee, and their property given to one who is not entitled to it, — (and this for no other reason than that no written notice of the perfectly valid and established trust was given to the depositary bank). Obviously in this aspect the statute is unconstitutional as providing for a taking of property without due process.
It may further be added that there would seem to be at least grave doubt as to the constitutionality of the second section of the statute, referring to deposits made prior to the passage of the act — from the standpoint of impairment of the obligation of contracts or the interference with ownerships already vested. One of the deposits in question in this suit was made long prior to the passage of the act.
For the reasons herein set forth it is concluded that the *Page 416 
statute of 1932 is inoperative, — certainly so far as the instant case is concerned, — to change the law applicable to the facts herein as hereinbefore mentioned; and that complainant has not proved his claim to the funds in question.
The bill will be dismissed, but without costs.