The motion is to strike the bill for want of equity and on the further ground that on the facts stated in the bill the fund referred to is the property of the ward of the guardian defendant or is held in trust for him. *Page 417 
The facts alleged in the bill of complaint and which must be taken as admitted on this motion, are that on April 15th, 1929, Christopher Reid opened a bank account in his own name in the West Side Trust Company and made numerous deposits and withdrawals between that time and the date of his death on August 26th, 1934. On August 19th, 1933, at his request, the account was changed to the name of "Christopher Reid, in trust for Joseph Jennings." The pass book for said account was retained by Christopher Reid until his death. Between August 19th, 1933, and the date of his death he made seven deposits in said account and three withdrawals therefrom, the last withdrawal being made twenty-four days before his death, at which time the balance was $496.51.
Joseph Jennings is a minor for whom the defendant Vincent Reid was appointed guardian on March 5th, 1935. The complainant, Jennie Travers, is both executrix and residuary legatee under the will of Christopher Reid. That will was dated June 25th, 1933, and a codicil is dated August 14th, 1934. By that codicil, substantial changes were made in the original will and the bequest of $100 to Joseph Jennings was increased to $500. The complainant claims the fund as part of the assets of her decedent's estate and the defendant guardian also claims to be entitled to receive the fund on behalf of his ward.
At the outset, the question of jurisdiction arises. InScudder v. Trenton Saving Fund Society, 58 N.J. Eq. 154, on a bill filed by the administrator of W.P.S. to collect a deposit in the name of "W.P.S. Surrogate," there being no other claimant, Vice-Chancellor Bird, while expressing the opinion that the administrator had the right to withdraw the funds, held that he was unable to advise a decree to that effect because of "the absence of any feature in the complainant's claim sufficient to confer jurisdiction upon a court of equity" and dismissed the bill apparently upon the ground that the relation between the depositor and the bank being that of creditor and debtor, the remedy at law was complete. But there are numerous reported cases in which this court has disposed of conflicting claims to bank deposits on bill by one of the claimants or the depositary bank itself. Nicklas v. Parker, *Page 418 69 N.J. Eq. 743; affirmed, 71 N.J. Eq. 777; McCullough v.Forrest, 84 N.J. Eq. 101; Jefferson Trust Co. v. Hoboken TrustCo., 107 N.J. Eq. 310; Johnson v. Savings Investment and TrustCo., Ibid. 547; In re Farrell, 110 N.J. Eq. 260; Long BranchBanking Co. v. Winter, 112 N.J. Eq. 218; Hudson Trust Co. v.Holt, 115 N.J. Eq. 34.
In Nicklas v. Parker, supra, the bill was filed by the administrator and, by answer and cross-bill filed by the bank, the cause was converted into one of interpleader.
Jefferson Trust Co. v. Hoboken Trust Co. was an interpleader suit, as was also Long Branch Banking Co. v.Winter. Hudson Trust Co. v. Holt was a bill by executors for instructions, but Johnson v. Savings Investment and Trust Co.
was apparently similar to the present action and there would seem to be no good reason why, where there are conflicting claims to a bank deposit, an executor claimant should await the will or whim of the bank to implead the claimants; and the procedure by direct bill by the executor avoids circuity of action and multifarious suits at law. Although the relation of debtor and creditor existed between the bank and the deceased depositor, a suit at law by the executor against the bank, while it would undoubtedly result in a judgment in favor of the executor (Scudder v.Trenton Saving Fund Society, supra; Boone v. Citizens SavingsBank, 84 N.Y. 83) would not dispose of the claim of the defendant guardian. It is the undoubted duty of the executor to collect all of the assets of his decedent's estate. Hayes v.Hayes' Adm'r, 45 N.J. Eq. 461; affirmed, 47 N.J. Eq. 567; 23Corp. Jur. 1189 § 423. And if, as a result of a suit at law, the bank paid the amount of the deposit to the executor, he would take it cum onere — subject to the trust, if any. The jurisdiction of courts of equity in matters touching the administration of estates of decedents is ancient, and owes its origin to the undoubted jurisdiction over matters of trust. 1Mad. Ch. 466; Willard Eq. Jur. 561; 1 Story Eq. Jur. 532, 533.
As already stated, the motion to strike is based upon the contention that the deposit involved is either the property of the ward of the defendant guardian or held in trust for him; and in support of this contention counsel for this defendant *Page 419 
invokes chapter 40, P.L. 1932, which is entitled "An act concerning trust deposits in savings banks, trust companies and banks where other than the deposit in trust no other or further notice is given in writing of the existence and terms of the trust." The pertinent portion of that act is section 1, which reads as follows:
"1. Whenever any deposit shall be made with any savings bank, trust company or bank by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to the savingsbank, trust company or bank, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, shall be paid to the person in trust for whom the said deposit was made, or to his or her legal representatives and the legal representatives of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee; provided, that the person for whom the deposit was made, if a minor, shall not draw the same during his or her minority without the written consent of the legal representatives of said trustee." (Italics mine.)
It is clear that except for that act the defendant guardian has no claim upon this fund. The transaction involved does not contain the elements of a gift inter vivos.
"Proof of a gift inter vivos must establish three things: (1) A donative intent on the part of the donor, (2) an actual delivery of the subject-matter of the gift, and (3) a stripping of the donor of all ownership and dominion over the subject-matter of the gift." Besson v. Stevens, 94 N.J. Eq. 549; Jones v. Westcott, 8 N.J. Mis. R. 312.
Assuming such a gift was intended, the second and third elements are lacking. Cook v. Lum, 55 N.J. Law 373; Stevenson
v. Earl, 65 N.J. Eq. 721; and if the intent was merely to transmit the title to the fund on deposit upon the death of the donor, in effect a testamentary gift, it was invalid because not made in compliance with the requirements of the statute of wills. An act essentially testamentary in character cannot be effectual except by compliance with the statute of wills. Stevenson v.Earl, supra, and Gordon v. Toler, 83 N.J. Eq. 25. And when it plainly appears that a revocable *Page 420 
trust to take effect in enjoyment at the death of the trustee was created in evasion of the statute of wills, equity will decline to enforce it. Dunn v. Houghton, 51 Atl. Rep. 71. Nor can the transaction be considered as creating a trust for the benefit of the ward of the guardian defendant, as there are no circumstances other than the making of the deposit in the name of "Christopher Reid in trust for Joseph Jennings" indicating an intention to create such a trust. Nicklas v. Parker, supra; Jefferson TrustCo. v. Hoboken Trust Co., supra. "The elements by which is tested a voluntary declaration of trust as distinguished from a declaration made upon consideration are the same as the tests of a gift." In re Coyle, 9 N.J. Mis. R. 158, citing Nicklas v.Parker, supra.
The facts in the instant case come squarely within the decision of Vice-Chancellor Garrison in Nicklas v. Parker, supra, affirmed by the court of errors and appeals, and it is distinguishable from Long Branch Banking Co. v. Winter,supra, in that there evidence other than the deposit itself showed the necessary donative intent, and the delivery of the pass book to the cestui que trust stripped the donor of his dominion over the subject-matter of the trust.
I conclude that under the law as it stood prior to the enactment of chapter 40, P.L. 1932, the complainant would be entitled to a decree directing the bank of deposit to turn over the fund to her. The remaining question is whether or not the law has been changed by that act.
It is contended on behalf of the complainant that if that act was intended to modify the Wills act it is ineffectual because the title of the act is defective in that it does not comply with constitutional requirements; also that the act is unconstitutional because it embraces two separate and distinct objects neither one of which is expressed in the title. But the decision in this cause does not necessarily turn upon the constitutionality of the act. Similar legislation to that now invoked has generally been held not to modify the requirements of a testamentary gift or a voluntary trust, but to have been enacted for the purpose of protecting a bank or trust company from liability in the event of its making a payment to the person for whom such a deposit was made or to his or *Page 421 
her legal representative, or to a joint depositor. Gordon v.Toler, supra; Jefferson Trust Co. v. Hoboken Trust Co., supra;Reeves v. Reeves, 102 N.J. Eq. 436.
The statute involved in Jefferson Trust Co. v. Hoboken TrustCo., supra, was chapter 210, P.L. 1903 p. 446, which is entitled "An act concerning trust companies (Revision of 1899)," and reads as follows:
"Whenever any deposit shall be made by any person in trust for another, and no other or further notice of the existence andterms of a legal and valid trust shall have been given to thetrust company, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, may be paid to the person for whom the said deposit was made, or to his or her legal representatives; provided, that the person for whom the deposit was made, if a minor, shall not draw the same during his or her minority without the consent of the legal representatives of said trustee." See 4 Comp. Stat. p.5666 § 32. (Italics mine.)
In considering the effect of chapter 40, P.L. 1932, it should be noted that on the same day that act was approved, three other acts (chapters 41, 42 and 43, P.L. 1932) being respectively an amendment to "An act concerning savings banks," a supplement to "An act concerning banks and banking," and an act amending "A supplement to an act concerning trust companies," were also approved. These three acts are similar to chapter 210, P.L.1903, above quoted, except that in these acts the words "shall be paid" are substituted for the words "may be paid" and it is also provided that "the legal representatives of the deceased trustee shall not be entitled to the funds so deposited;" and, in the proviso, the written consent of the legal representatives of the trustees is required for the withdrawal of the deposit if the cestui que trust is a minor, whereas under the 1903 act such consent need not be in writing. The necessity of four separate and distinct acts to accomplish the same purpose is not apparent from the acts themselves as recorded in the pamphlet laws. The substitution of the provision for a mandatory payment instead of permissive payment and the provision that the legal representatives of the trustee should not be entitled to the funds so deposited, may have been intended to supply what was considered to be *Page 422 
lacking in the 1903 act passed upon in Jefferson Trust Co. v.Hoboken Trust Co., supra; but if that act was ineffectual to create a valid trust by a deposit of a sum of money in the name of one in trust for another, I do not see how the additional language included in chapters 41, 42 and 43, P.L. 1932, can accomplish that purpose. These acts, entitled as they are, cannot, of course, be considered as modifying or repealing protanto the statute of wills. Chapter 40, P.L. 1932, is, therefore, the only act to be considered. It should be noted that the act does not say that "no other or further notice" or evidence "of the existence or terms of a legal and valid trust" shall be required to establish such a trust; it merely eliminates the necessity of "notice * * * in writing to the * * * bank." But I think it necessarily presupposes the existence of all the elements of a "legal and valid trust" although no written notice to the bank of their existence is required. What then, in the way of transmission of property rights is accomplished by the provisions of the act? As already determined, neither a giftinter vivos nor a testamentary gift is made; nor, tested by our decisions, was any trust created. Nicklas v. Parker, supra.
One of the essential elements of a valid trust is that the equitable title to the property involved shall pass immediately upon the creation of the trust, although the legal title may be retained by the donor or some third person; but there must be a transmission, or tradition, as it is sometimes called, of property rights from one to another at the time the trust is created. The question then arises — when, under this act, does the transmission or tradition of the property rights take place? Is it upon the opening of the account by one in trust for another? Or does the transmission take place at the death of the depositor? If upon the opening of the account, it is but an "Indian gift" as the depositor retains the right to take it back. If at death, it is a testamentary gift and void because not in compliance with the statute of wills. It will not be assumed that the legislature intended any such result. Nor, so far as is shown by the act itself, was it the intention of the legislature to declare that the mere act of making the deposit should constitute a valid declaration of trust. If so, it was *Page 423 
abortive; and had it been so intended it would have been easy to say so by appropriate language. Language in the 1903 act almost identical with that here used, has already been held insufficient to establish a legal and valid trust. Jefferson Trust Co. v.Hudson Trust Co., supra. No other or greater effect can be given to chapter 40, P.L. 1932. Any legislation which would enable a person to thus enjoy his property during his life and at his death pass it on to a chosen beneficiary in a manner not authorized by the statute of wills, and to the exclusion and in fraud of his creditors, ought to be scrutinized very closely and unless the intendment of the legislature to open the door to such fraud is plain, the act should be so construed as to keep the door closed. There are many other difficulties touching the effectiveness of this act which to me seem fatal. What, for instance, becomes of the title to the fund if the so-calledcestui is a minor and the legal representatives of the so-called trustee refuse their consent to its withdrawal by a minor who dies before he becomes of age? And aside from the constitutional questions raised at the argument on this motion, there are other serious constitutional questions involved, but I deem it unnecessary to consider any of them. The motion to strike the bill is denied.
NOTE — Since the foregoing opinion was prepared, my attention has been called to the opinion of Vice-Chancellor Buchanan inThatcher v. Trenton Trust Co., 119 N.J. Eq. 408 (not reported at the time this opinion was written), in which he holds that chapters 40, 41, 42 and 43, P.L. 1932, are ineffective to change the rules of law touching gifts inter vivos and declarations of trust. *Page 424