## FIDELITY UNION TRUST CO. ET AL., EXECUTORS, v. FIELD.

No. 32. Argued November 12, 13, 1940.—Decided December 9, 1940.

170

*Mr. Charles Danzig*, with whom *Mr. Francis F. Welsh* was on the brief, for petitioners.

*Mr. Russell C. MacFall* for respondent.

Mr. Chief Justice Hughes delivered the opinion of the Court.

In 1935, Edith M. Peck caused the title of a savings bank account standing in her name to be transferred on the records of the bank to "Edith M. Peck, in trust for Ethel Adelaide Field." Miss Peck retained exclusive control over the account, with sole right of withdrawal and right of revocation, and gave no further notice of the existence of a trust.

This suit was brought by Ethel Adelaide Field against the bank and the executors of Miss Peck to obtain a decree that the credit balance of the account belonged to the complainant. The executors denied the validity of the trust and claimed title. The District Court found in favor of the executors upon the ground that under the law of New Jersey there was no trust and no valid gift. The Circuit Court of Appeals reversed the judgment, holding that under a state statute the complainant was entitled to recover. In so ruling, the court declined

to follow contrary decisions of the Chancery Court of New Jersey. 108 F. 2d 521. In view of the importance of the question thus presented, we granted certiorari. 309 U. S. 652.

In 1932, the legislature of New Jersey passed four statutes, in similar terms and approved on the same date, dealing with trust deposits in banks. The text of one of these provisions is set forth in the margin.[1] Prior to these statutes, it had been the law of New Jersey that a mere savings bank deposit made by a decedent in his own name as trustee for another, over which the decedent exercised complete control during his life, was insufficient to establish a gift *inter vivos* or to create a trust as against the decedent's legal representatives. *Nicklas* v. *Parker,* 69 N. J. Eq. 743, affirmed, 71 N. J. Eq. 777; 61 A. 267; *Johnson* v. *Savings Investment & Trust Co.,* 107 N. J. Eq. 547; 153 A. 382, affirmed, 110 N. J. Eq. 466; 160 A. 371.

The statutes of 1932 came before the Chancery Court of New Jersey in 1936, in two cases decided independently by two Vice-Chancellors, *Thatcher* v. *Trenton Trust Co.,*

---

[1] Chapter 40, New Jersey Session Laws of 1932, § 1, is as follows:

"1. Whenever any deposit shall be made with any savings bank, trust company or bank by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to the savings bank, trust company or bank, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, shall be paid to the person in trust for whom the said deposit was made, or to his or her legal representatives and the legal representatives of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee; *provided,* that the person for whom the deposit was made, if a minor, shall not draw the same during his or her minority without the written consent of the legal representatives of said trustee." See Revised Statutes of New Jersey, 1937, 17:9-4.

119 N. J. Eq. 408; 182 A. 912, and *Travers* v. *Reid,* 119
N. J. Eq. 416; 182 A. 908. In the *Thatcher* case it ap-
peared that the decedent, at the time of her death in
1934, had two bank balances standing to her credit "in
trust for Clifford Thatcher," the complainant. The bill
was dismissed. The court found that there were no facts,
beyond the mere opening of the account in that manner,
"in any way tending to prove the declaration of a trust."
The court examined the legislation of 1932, which it was
argued had changed the law of the State, and after con-
sidering possible purposes of the legislature and analyzing
the language employed, which was deemed to be "con-
fused" and "difficult to comprehend," the court decided
that the legislation was inoperative to change the law
applicable to the facts before the court. In the *Travers*
case, the decedent had changed his bank account to his
name "in trust for Joseph Jennings," a minor. In a suit
by the decedent's executrix to recover the money, a mo-
tion by the minor's guardian to strike the bill for want
of equity and upon the ground that the fund was the
property of the ward or held in trust for him, was denied.
After stating the law as it stood before the statutes of
1932, the court concluded that they had not been effective
to alter the previous legal requirements of a gift *inter
vivos* or a valid trust. These cases were not reviewed
by the Court of Errors and Appeals of New Jersey and,
so far as appears, that court has not expressed an opinion
upon the construction and effect of the statutory
provisions.[2]

---

[2] In *Cutts* v. *Najdrowski,* 123 N. J. Eq. 481; 198 A. 885 (1938),
the Court of Errors and Appeals held that the validity of a trust
of choses in action created by a transaction *inter vivos* was deter-
mined by the law of the place where the transaction occurred; in
that case New York. In *Trust Company of New Jersey* v. *Fara-
well,* 127 N. J. Eq. 45; 11 A. 2d 98 (1940), the Court of Errors and
Appeals held that, where the decedent had made a deposit in her
name in trust for her daughters, and the savings bank book was

The Circuit Court of Appeals found it impossible to distinguish the facts in the two Chancery cases from those shown here. The court recognized its duty to follow the law of the State and said that where that law had been determined by the state court of last resort its decision must be followed irrespective of the federal court's opinion of what the law ought to be. But the majority of the Circuit Court of Appeals took the view that it was not so bound "by the pronouncements of other state courts" but might conclude that "the decision does not truly express the state law." The court held that the statute of 1932 was "clearly constitutional and unambiguous" and that "contrary decisions" of the Chancery Court of New Jersey were not binding. Accordingly, the judgment of the District Court was reversed.

We think that this ruling was erroneous. The highest state court is the final authority on state law (*Beals* v. *Hale*, 4 How. 37, 54; *Erie Railroad Co.* v. *Tompkins*, 304 U. S. 64, 78), but it is still the duty of the federal courts, where the state law supplies the rule of decision,[3] to ascertain and apply that law even though it has not been expounded by the highest court of the State. See *Ruhlin* v. *New York Life Insurance Co.*, 304 U. S. 202, 209. An intermediate state court in declaring and applying the state law is acting as an organ of the State and its deter-

---

thereafter in the possession of the daughters and withdrawals were made upon the signatures of the mother and the daughters and were used for maintaining properties devised to the daughters by the mother shortly after the account was opened, there was sufficient evidence to show a presently effective trust. The court said that such a trust depends essentially upon the same principles. "that activate a gift *inter vivos*, comprising donative intent, delivery of the subject-matter to the extent that delivery is possible or can be indicated, and the abdication by the donor of dominion over the subject-matter." *Id.*, p. 48. In these cases, the court did not refer to the statutes of 1932 or to the Chancery decisions cited in the above text.

[3] Judiciary Act of 1789, § 34; R. S. 721, 28 U. S. C. 725.

178

mination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question. We have declared that principle in *West* v. *American Telephone & Telegraph Co., post,* p. 223. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.

Here, the question was as to the construction and effect of a state statute. The federal court was not at liberty to undertake the determination of that question on its own reasoning independent of the construction and effect which the State itself accorded to its statute. That construction and effect are shown by the judicial action through which the State interprets and applies its legislation. That judicial action in this instance has been taken by the Chancery Court of New Jersey and we have no other evidence of the state law in this relation. Equity decrees in New Jersey are entered by the Chancellor, who constitutes the Court of Chancery,[4] upon the advice of the Vice-Chancellors,[5] and these decrees, like the judgments of the Supreme Court of New Jersey, are subject to review only by the Court of Errors and Appeals.[6] We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court (*Erie Railroad Co.* v.

---

[4] N. J. Constitution, Art. VI, § 4.

[5] See *Gregory* v. *Gregory,* 67 N. J. Eq. 7, 10, 11; 58 A. 287; *In re Appointment of Vice-Chancellors,* 105 N. J. Eq. 759; 148 A. 570.

[6] Revised Statutes of New Jersey, 2: 27–350, 2: 29–117.

*Hilt*, 247 U. S. 97, 100, 101; *Erie Railroad Co. v. Duplak*, 286 U. S. 440, 444), and we think that the decisions of the Court of Chancery are entitled to like respect as announcing the law of the State.

While, of course, the decisions of the Court of Chancery are not binding on the Court of Errors and Appeals, a uniform ruling either by the Court of Chancery or by the Supreme Court over a course of years will not be set aside by the highest court "except for cogent and important reasons." *Ramsey* v. *Hutchinson*, 117. N. J. L. 222, 223; 187 A. 650. It appears that ordinarily the decisions of the Court of Chancery, if they have not been disapproved, are treated as binding in later cases in chancery (*Philadelphia & Camden Ferry Co. v. Johnson*, 94 N. J. Eq., 296, 297; 121 A. 900), but there is always, as respondent urges, the possibility that a particular decision of the Court of Chancery will not be followed by the Supreme Court (see *Flagg* v. *Johansen*, 124 N. J. L. 456, 461; 12 A. 2d 374) or even by the Court of Chancery itself. See *Kicey* v. *Kicey*, 112 N. J. Eq. 459, 461; 164 A. 684. It is the function of the court of last resort to resolve such conflicts as may be created by decisions of the lower courts, and except in rare instances that function is performed and the law is settled accordingly. Here, however, there is no conflict of decision. Whether there ever will be, or the Court of Errors and Appeals will disapprove the rulings in the *Thatcher* and *Travers* cases, is merely a matter of conjecture. See *West* v. *American Telephone & Telegraph Co., supra.* At the present time the *Thatcher* and *Travers* cases stand as the only exposition of the law of the State with respect to the construction and effect of the statutes of 1932, and the Circuit Court of Appeals was not at liberty to reject these decisions merely because it did not agree with their reasoning.

The question has practical aspects of great importance in the proper administration of justice in the federal

courts. It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship. In the absence of any contrary showing, the rule of the *Thatcher* and *Travers* cases appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

The decree of the Circuit Court of Appeals is reversed and that of the District Court is affirmed.

*Reversed.*