In the Matter of the Estate of ANNA B. WEINSTEIN, Deceased.

Surrogate's Court, Bronx County, May 24, 1941

*Archibald Oboler*, for Sidney Weinstein, petitioner.

*William G. Werner* [*Elmer Fried* of counsel], for Lillian Ruocco, as executrix, etc.

*August P. Klein*, special guardian.

HENDERSON, S. Sidney Weinstein, a grandson of the decedent, petitions to compel the executrix of her will, dated August 27, 1930, to execute papers required by a New Jersey savings bank before it will pay to the petitioner a deposit therein made in the name of the decedent in trust for the petitioner.

The executrix rests her defense upon allegations that this court is without jurisdiction in the matter because it involved a deposit with a savings bank situate in New Jersey and doing business under the laws of that State, that the money on deposit therein was the personal property of the decedent during her lifetime and that it is now a part of her estate.

On November 28, 1939, the decedent deposited $1,000 with The Howard Savings Institution in Newark, N. J., in an account opened in the form " Anna B. Weinstein in trust for Sidney

Weinstein," entered in its deposit book No. 774,257. There have been no withdrawals nor deposits in that account since the date of its opening. No dividend has been entered in the book. There is no evidence that any other or further notice of the existence and terms of a legal and valid trust was ever given to the savings bank.

The decedent had several children, but was residing with her son Morris and his son Sidney, the petitioner, in a house owned by her in this county, when Morris died in October, 1939. She continued to live there with Sidney until her death on January 21, 1940. The petitioner became of age in June, 1940.

Prior to open ng this account the decedent had told her son Joseph that she had $1,000 to put away and wanted to deposit it in their joint names. He refused. She took Sidney, then a minor, with her when she made the deposit in the New Jersey bank. Later she told Joseph that she was having trouble with her daughters and that she had put the money in a New Jersey bank in trust for Sidney, that it was the balance of insurance money that came from Sidney's father, and that nobody could touch her money which was safe in New Jersey.

Sidney's father, Morris, left net insurance of about $1,500 when he died. Sidney testified that the bank book was in his possession since " about November 20th or so of 1939." Upon objection that this testimony was incompetent under the provisions of section 347 of the Civil Practice Act, he was not permitted to testify further about the deposit book or as to any material conversation or transaction with his grandmother. He was not cross-examined as to such possession nor was any evidence offered in refutation, but the executrix correctly argues that such possession is not, by itself, evidence of any probative value because the decedent and her grandson were living in the same house during the entire period from the issuance of the bank book to the date of her death.

Until about a decade ago, the validity and effect of any *inter vivos* trust of intangible personalty were determinable in this State by the law of the State wherein the settlor was domiciled. (*Shannon* v. *Irving Trust Co.*, 246 App. Div. 280, 284; affd., 275 N. Y. 95, 101.) This rule was changed by statute in 1930 to exclude from its operation trusts wherein the settlor had expressed a contrary intent. (Pers. Prop. Law, § 12-a.) In 1933 our Court of Appeals enunciated a further limitation upon the application of the prior rule when it decided that the validity of a conveyance in trust of " documents which in the market-place are treated as property," and the intangible property embodied in them such as shares of corporate stocks or debts, is determinable, like tangible chattels, by the law of the State wherein the documents are situate.

(*Hutchison* v. *Ross*, 262 N. Y. 381, 390, 391.) The prevailing opinion, however, expressly excluded from the effect of the decision " choses in action or intangible' property not embodied or merged in a mercantile document " and documents which are " merely evidence of property."

Even if the doctrine of that decision be extended to include a savings bank book in form evidencing a deposit by one in trust for another, the settlor-trustee and the beneficiary, at all times mentioned herein, were domiciled in this State wherein the book was kept and still is situate. It has been held that the disputed ownership of funds deposited in a New York savings bank by one who died a resident of Massachusetts, in trust for residents of Ireland, should be determined by the law of Massachusetts. (*Morris* v. *Sheehan*, 112 Misc. 222, 224; affd., 199 App. Div. 968; affd., 234 N. Y. 366.)

I hold that the issue before me is determinable by the law of this State.

When the decedent died, a presumption arose that an absolute trust was created as to the balance on hand at that time. (*Matter of Totten*, 179 N. Y. 112, 126.) This presumption is not conclusive, but may be overcome by competent evidence of the depositor's contrary intent. (*Morris* v. *Sheehan*, *supra*.) The evidence that has been adduced here is insufficient to overcome this presumption. The testimony is naturally meagre under the circumstances. The petitioner was blocked from relating the circumstances of his trip to Newark with the decedent and any conversation he had with her concerning the deposit. (Civ. Prac. Act, § 347.) Any statements the decedent may have made subsequent to the deposit would not be admissible to rebut such presemption. (*Tierney* v. *Fitzpatrick*, 195 N. Y. 433.)

I find that the funds on deposit in the account in controversy, including dividends declared thereon but not entered in the deposit book, are the absolute property of the petitioner free from any control of the executrix or of the estate of her testatrix.

Even under the law of New Jersey, the petitioner must prevail.

Prior to the enactment of pertinent legislation in 1932 (N. J. Laws of 1932, chaps. 40, 41, 42 and 43), it had been the law of New Jersey that the mere opening of a savings bank account in the name of the depositor in trust for another, over which the depositor exercised complete control during his life, was insufficient to create a trust as against his legal representatives upon his death. (*Fidelity Trust Co* v. *Field*, 311 U. S. 169, 175.)

In the 1937 revision of the laws of New Jersey, effective December 20, 1937, the statutes relating to deposits in trust in banks,

including the new enactments and amendments of 1932, were revised and incorporated into section 4 of chapter 9 of title 17 of the Revised Statutes of New Jersey.

This revised statute reads as follows:

" 17: 9–4. Deposits in trust in banks, savings banks or trust companies  When a deposit has been or shall be made in a bank, savings bank or trust company by a person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust has been given in writing to the bank, savings bank or trust company, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, sha 1 be paid to the person in trust for whom the deposit was made, or to his legal representative and the legal representative of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee. If the person for whom the deposit was made is a minor, he shall not draw the deposit during his minority without the written consent of the legal representative of the trustee."

The quoted language differs but slightly from that found in section 1 of chapter 40 of the New Jersey Session Laws of 1932, which came before the Chancery Court of New Jersey for consideration in three cases hereinafter cited.

The latest adjudication of the construction and effect of this statute was handed down in the Court of Chancery of New Jersey on April 1, 1941. (*Hickey* v. *Kahl*, 129 N. J. Eq. 233; 19 A. [2d] 33.) The Vice Chancellor disagreed with the earlier decisions of two other Vice Chancellors sitting in Chancery in 1936. (*Thatcher* v. *Trenton Trust Co.*, 119 N. J. Eq. 408; 182 A. 912 and *Travers* v. *Reid*, 119 N. J. Eq. 416; 182 A. 908.) He held that the act in question was constitutional and changed the rules of law theretofore laid down by the courts of New Jersey as applied " to the mere opening of a bank account in the name of A in trust for B." He declared the intended effect of the statute " to be that when one [donor] opens an account in a savings bank in his name in trust for a named beneficiary [donee] and there is no evidence as to the intent of the donor which can be shown after the donor's death, other than as can be gathered from the form in which the account was opened, the intent of the donor shall be taken to be to create an immediately effective trust for the benefit of the donee, over which the donor reserves a power of revocation, as evidence of which he retains possession of the passbook, and that so much of the funds deposited in that trust account over which the donor has failed to exercise his power of revocation shall belong to the

donee free from any claim thereto on the part of the donor's legal representatives. In such a case the only effect of the donor's death is to terminate his power of revocation. His death does not complete the trust but renders it irrevocable." This construction of the legislative intent is similar to our own rule applicable to similar deposits, as enunciated in *Matter of Totten (supra).*

The executrix argues that *Fidelity Trust Co.* v. *Field (supra)* is determinative of the statute's status, but that is not true. Mr. Chief Justice HUGHES there found that the only adjudications by New Jersey courts of the construction and effect of the statute, up to the date of his opinion, were made in the above-cited *Thatcher* and *Travers* cases, which were in agreement upon the question. He noted the " possibility that a particular decision of the Court of Chancery will not be followed * * * even by the Court of Chancery itself," but stated that " here, however, there is no conflict of decision." The Supreme Court held that " in the absence of any contrary showing, the rule of the *Thatcher* and *Travers* cases appears to be the one which would be applied in litigation in the State court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals." The Supreme Court neither approved nor disapproved the 1936 decisions in Chancery, but reversed the Circuit Court of Appeals, solely because it was the duty of that Federal court in deciding this State question to follow the theretofore undisturbed determinations of the New Jersey Court of Chancery in declaring and applying the law of its State in the absence of a countervailing view by the State's highest court or of other conflict of decision.

That decision of the Supreme Court is no longer applicable to the statute in question, because of the 1941 decision in the *Hickey* case which is in direct conflict with the 1936 decisions of the same Chancery Court in the *Thatcher* and *Travers* cases. It is not difficult to find the rule of the earlier cases unsound and to follow as sound the construction of the statute as expounded in the *Hickey* decision which concurs in that respect with the prevailing and concurring opinions of the United States Circuit Court of Appeals in the decision which was reversed on other grounds as hereinabove noted. (*Field* v. *Fidelity Union Trust Co.*, 108 F. [2d] 521, 526, 527.) The dissenting opinion was silent as to whether the 1936 Chancery decisions were sound or unsound, but confined its dissent to the failure of the majority to follow the undisturbed decisions of a high State court of competent jurisdiction in construing the New Jersey statute. Under the provisions of that statute the petitioner is entitled to the funds deposited as hereinabove noted and to their increment.

This court has no jurisdiction over the New Jersey bank and cannot compel it to pay its debt to any one. That circumstance is immaterial because the bank concedes its indebtedness and is willing to pay the beneficiary if the executrix consents. This court, however, does have jurisdiction over the petitioner, the executrix and the issue of title between them. It may determine the question of title to the indebtedness, and thereupon may direct the petitioner to del'ver the bank deposit book to the executrix or direct the executrix to execute and deliver to the petitioner any papers that may be required to perfect his title to the chose in action, so that he may receive the deposit free from her control. (Surr. Ct. Act, §§ 20, 40 and 206-a.)

The executrix is directed to execute, acknowledge and deliver to the petitioner her consent to the payment of such funds to him by the bank in which they were deposited, in such form as the said bank may require.

Settle decree.