**The AETNA CASUALTY AND SURETY COMPANY, Plaintiff,**

v.

**Sarah NEFF, et al., Defendants.**

**No. C2–97–206.**

United States District Court, S.D. Ohio, Eastern Division.

Nov. 20, 1998.

---

Bradley Lewis Snyder, Roetzel & Andress, Columbus, OH, for plaintiff.

Brian Jay Bradigan, Gallagher, Bradigan, Gams, Pryor & Littrell, Columbus, OH, for defendants.

## OPINION AND ORDER

SARGUS, District Judge.

This matter arises as a result of a fire that occurred at an apartment complex on February 23, 1995. This diversity action is before the Court on the Motion for Summary Judgment filed by the tenant of the apartment in which the fire originated, Defendant, Sarah

Neff.[1] Plaintiff, the Aetna Casualty and Surety Co., as subrogee of the owners of the apartment complex, filed a Memorandum in Opposition, to which Defendant Neff replied. The matter is now ready for disposition. For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

## I.

On February 23, 1995, a fire broke out at the Brookeville Apartment complex, at 6832 Gafford Drive, in Columbus, Ohio. The fire originated in an apartment leased by Defendant, Sarah Neff. Plaintiff, The Aetna Casualty and Surety Company ("Aetna"), insured the apartment complex against property damage. Aetna, as the insurer of the complex, is subrogated to the claim of Brookeville Apartments, and seeks to recover in excess of $385,000 from Defendant Neff under theories of breach of contract and negligent failure to maintain and protect her property from an obvious danger that a fire would occur.

1. Aetna originally filed a complaint on February 20, 1997 naming Defendant Neff, "Raymond Arnold, Sr., Raymond Arnold, Jr. and Cathy Sue Kerns." Aetna thereafter realized that it had misnamed the Arnold family, and moved to amend the Complaint to reflect the true and accurate names of the Defendant—Arnold family. Accordingly, while they are not the subject of this Motion for Summary Judgment, Aetna has, by its Amended Complaint, named as Defendants the parents, Raymond Henry Arnold, Jr. and Cathy Sue Kerns–Arnold, and their child, Raymond Curtis Arnold.

2. At her deposition, Defendant Neff testified both that she believed she had locked the door, and that she was unsure whether the door was locked. (Neff Depo., at 85.) Because the entire transcript is not before the Court, it is difficult to discern the context of these statements.

3. In their memoranda, the parties operate under the assumption that the fire was the result of arson. Aetna's theory that Raymond Curtis Arnold was the arsonist, however, is wholly unsubstantiated with any evidence other than the bare allegations of the pleadings. In apparent support of its theory, Aetna provided in opposition to Defendant's Motion for Summary Judgment a few pages from Ms. Neff's deposition, which contain sparse references to her own speculation that Raymond Curtis Arnold stared the fire, as well as an answer to an interrogatory propounded by Aetna to Defendant Neff in which she sets forth her "contention" that Raymond Curtis Ar-

On the morning of the fire, Ms. Neff left for work between 6:45 and 7:15 a.m. (Neff Dep., at 100; Neff Aff., ¶ 3.) When Ms. Neff left that morning, no one was in her apartment. (Neff Dep., at 100.) Moreover, she had not given anyone, besides her own son, permission to enter or to be in the apartment while she was at work. (Neff Aff., ¶ 1.) While Ms. Neff recalls that she turned the deadbolt lock on her back door with her key as she exited her apartment on February 23, 1995, apparently some question remains as to whether Ms. Neff completely locked the back door as she left the apartment.[2]

Under Aetna's theory of the case, Defendant Raymond Curtis Arnold entered Ms. Neff's apartment through the unlocked door [3] and started the fire in her apartment. It is undisputed that Defendant Neff did not give Raymond Curtis Arnold permission to enter her apartment. Aetna also insists that Ms. Neff knew that Raymond Curtis Arnold was suspected of setting fire to another apartment in the complex, and "knew that Mr. Arnold planned to burn her property." (Response in Opp., unnumbered p. 3.) [4]

nold stared the fire. Defendant, Raymond Curtis Arnold, as well as his parents (all of whom are proceeding *pro se* through the father, Mr. Raymond Henry Arnold, Jr.), denied any culpability for the fire. See Letter from Defendants, construed as an Answer to the Amended Complaint, July 28, 1998 (Doc. 8). Thus, the Court has nothing before it, except complete speculation, that the cause of the fire was arson and that Raymond Curtis Arnold was the arsonist.

4. The Court notes that neither party has filed the transcript of Defendant Neff. Accordingly, the Court has before it only fourteen (14) photocopied pages of what appears to be more than a 100 page transcript. Moreover, the Court notes that Aetna has provided three (3) unsworn and unverified exhibits, two of which (Exhibits A and B) would not be properly before the Court on this Rule 56 Motion but for Defendant's agreement to stipulate. Defendant, however, has not stipulated to the one (1) photocopied page (Page 17) of an extensive transcript from a telephone interview of Ms. Neff following the fire.

In addition to the utter lack of evidence presented here to substantiate its theory that Mr. Raymond Curtis Arnold started the fire, Aetna has submitted to this Court scant evidence in its attempt to establish a genuine issue of fact that Ms. Neff "knew" of this particular risk. In the few pages of her deposition testimony that have been provided to the Court, Ms. Neff avers that she did not take Raymond Curtis Arnold's threat

Aetna alleges that damages from the fire exceeds $385,000. Defendant Neff lost all of her personal belongings, including clothing and memorabilia, to the fire.

## II.

The procedure for granting summary judgment is set forth in Fed.R .Civ.Pro. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.* 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## III.

Aetna invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332. As a federal court exercising diversity jurisdiction over state-law claims, this Court, sitting in Ohio, is to apply Ohio law. *See, e.g., Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 464–65, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 68 (1938). The Court must attempt to determine how the Ohio Supreme Court would resolve this case. In the absence of more convincing evidence of what the state law is, a federal court should apply the law as declared by an intermediate state court. *Fidelity Trust Co. v. Field,* 311 U.S. 169, 177–78, 61 S.Ct. 176, 85 L.Ed. 109 (1940); *Woodruff v. Tomlin,* 616 F.2d 924, 928–29 (6th Cir.1980). To that end, the Court "seek[s] guidance in analogous state court decisions, persuasive adjudications by

---

to "torch" her seriously, but instead considered him a troubled child who liked to threaten everyone, including other little children. (Neff Dep., at 33.) Moreover, Ms. Neff's affidavit reveals that she was "not aware of anyone's actions or intentions to destroy or damage, by fire or any other means, any part of the premises...." (Neff Aff., ¶ 2 .)

courts of sister states, learned treatises, and public policy considerations identified in state decisional law." *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1151 (1st Cir.1996).

### A.) *Negligence*

Defendant Neff maintains that the duties of a tenant are determined by the Landlord Tenant Act in Ohio, codified at Ohio Rev. Code ("O.R.C.") § 5321.01 *et seq.* Specifically, Defendant contends that O.R.C. § 5321.05(A)(6) outlines the scope of the tenant's duty to control the actions of a third-party. Defendant argues that a tenant is accountable under the statute for the actions of a third-party only when that third-party is on the premises with permission of the tenant and the third-party's actions are known to the tenant.

Aetna, on the other hand, alleges that Ms. Neff failed to take Raymond Curtis Arnold's "threats" seriously, and failed to take adequate steps to protect Aetna's property and her own from fire by failing to lock her door. Aetna maintains that it does not seek vicarious liability for the acts of the alleged arsonist under O.R.C. § 5321.05(A)(6), but instead seeks to hold Ms. Neff liable for her own independent acts of alleged negligence in purportedly failing to lock her back door. Aetna contends that Ms. Neff's failure to lock her back door allowed the arsonist to enter the premises and start the fire.

■■■ The Landlord Tenant Act of 1974 generally governs the obligations and remedies of parties to rental agreements and leases of residential premises in Ohio. *Shroades v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 21–22, 427 N.E.2d 774 (1981). Ohio Rev.Code § 5321.12 allows for additional remedies other than those provided in the statutory framework;[5] "the remedies in R.C. Chapter 5321 are cumulative...." *Id.* at 25, 427 N.E.2d 774; *see also id.* at 27, 427 N.E.2d 774 ("... the remedies afforded the tenant, as well as the landlord, in R.C. Chapter 5321,

are in addition to the common law remedies possessed by both landlord and tenant prior to the enactment of R.C. Chapter 5321 in 1974") (Brown, J., concurring). While the Landlord Tenant Act clearly abrogated the common law distribution of liability, it does not provide the wholly exclusive remedy available to landlords and tenants.

Defendant Neff asserts in her Motion for Summary Judgment that O.R.C. § 5321.05 provides the controlling statement of the law regarding tenant liability for negligent or intentional acts done in the rental premises by third-persons. Defendant contends that a tenant's duty to a landlord to prevent damage to the premises by at third-party is violated only when the tenant is aware of the third-party's presence at the location and is cognizant of the third-party's actions and intentions.

O.R.C. § 5321.05(A) provides in pertinent part:

(A) A tenant who is a party to a rental agreement shall do all of the following:

...

(6) Personally refrain and forbid any person who is on the premises *with his permission* from intentionally or negligently destroying, defacing, damaging, or removing any fixture, appliance, or other part of the premises;

O.R.C. § 5321.05(A)(6) (emphasis added). This provision of the Act has been interpreted by the intermediate courts of the State of Ohio to mean that, in order for a tenant to be held liable to his or her landlord for damages caused by the negligent acts of a third person, "the landlord must show that the tenant was at least cognizant of the third person's presence, and of his [or her] intentions or actions." *Allstate Ins. Co. v. Dorsey*, 46 Ohio App.3d 66, 545 N.E.2d 920, Syllabus ¶ 1 (Ct. App. 9th Dist., 1988). The courts have noted that, "[t]o require a tenant to predict and prevent a guest from acting carelessly would

---

5. Section 5321.12 provides as follows: "In any action under [the Act,] any party may recover damages for the breach of contract or breach of any duty that is imposed by law." O.R.C. § 5321.12. Likewise, § 5321.06 permits a landlord and tenant to "include in a rental agreement

any terms and conditions, including any ... provisions governing the rights and obligations of the parties that are not inconsistent with or prohibited by [the Act] or any other rule of law." O.R.C. § 5321.06.

place the onerous burden of constant and personal supervision on a tenant. It would be impossible for a tenant to foresee and prevent all the possible negligent acts a guest could perform." *Ohio Casualty Ins. Co. v. Wills,* 29 Ohio App.3d 219, 221, 504 N.E.2d 1164 (Ct.App.3d Dist.1985).

The record undisputedly reflects that Defendant Neff was not cognizant of the presence or the intentions of the arsonist on her property on February 23, 1995. (Neff Dep., at 100, 106; Neff Aff. ¶¶ 1 & 2.) Defendant maintains, therefore, that she has not violated the duty imposed upon her by the statute and Aetna's cause of action in negligence fails as a matter of law.

Defendant's argument is certainly inviting. The intermediate courts of Ohio have expressed concern that a tenant should not be held accountable for all acts committed by a third-person while in the leased premises. The reasoning of these Ohio cases interpreting O.R.C. § 5321.05 would seem to suggest that a tenant's liability is limited to instances in which he or she can exert some control over a third-party's behavior. "The legislature could not have intended to impose ... an unrealistic burden on a tenant." *Wills,* 29 Ohio App.3d at 221, 504 N.E.2d 1164. It logically follows from this reasoning that the legislature could not have intended to hold a tenant liable for the intentional criminal acts of an individual when the tenant is not even cognizant of his presence in the apartment.

While it is abundantly clear that the courts of Ohio have struggled with the scope of liability that should attach to a tenant for the negligent acts of an invitee, the very language of the statute prohibits a tenant from allowing any person who is on the premises *with her permission* from intentionally destroying it. No Ohio case has recognized a claim of a landlord against a tenant for damages incurred as a result of the intentional acts of a third-party on the leased premises *without* the permission of the tenant. Aetna, however, has not pleaded a cause of action under this provision of the Ohio Revised Code, but instead seeks a remedy under common law principles of negligence. The crux of Aetna's negligence claim is that Defendant Neff improvidently left her back door unlocked and failed to take young Mr. Arnold's threats to torch her seriously. Aetna contends that these omissions allowed the alleged arsonist to enter the premises undetected, and thereby permitted him unfettered access to pursue his illegal endeavors.

■ To recover under a theory of negligence, Plaintiff must demonstrate that There was a duty, a breach of that duty, proximate causation, and injury. *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). Ordinarily, the law imposes no duty to control the conduct of a third-person so as to prevent him or her from causing harm to another, except in the circumstances in which "a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection." *Federal Steel & Wire Corp. v. Ruhlin Construction Co.,* 45 Ohio St.3d 171, 173, 543 N.E.2d 769 (1989).

Aetna suggests that the Defendant's failure to lock her door was a beach of a broader duty to act reasonably to protect the premises. In paragraph three of her lease, Defendant Neff agreed "to surrender the premises at the end of the term in as good condition as when received, reasonable wear and tear excepted." [6] Plaintiff's Mem. in Opp., Exh. A, ¶ 3. Aetna cited *Central Mut. Ins. v. Faller,* 71 Ohio Misc.2d 58, 654 N.E.2d 213 (Licking Cty. Ct. Comm. Pls., 1995) for the proposition that Ms. Neff was bound by this term of her contract to return the premises in as good condition as when received, and returning the apartment with substantial fire damage violated this contractual term.

In *Faller,* the issue presented was whether a co-tenant who was not in possession or control of the leased premises could be held liable for damages caused by the negligence of the other co-tenant who was in possession and control of the leased premises. *Id.* at 60, 654 N.E.2d 213. There, the court found that

---

**6.** Further, in the Rules and Regulations which Ms. Neff signed and agreed to abide by when she rented her apartment, she agreed to be responsible for damages caused by her own "fault or negligence." See Plaintiff's Mem. in Opp., Exh. B.

the clear terms of the lease requiring the defendant to take care of the premises and "to make good any injury thereto" bound him for liability for the fire damage. *Id.* at 62, 654 N.E.2d 213.

The Court is not convinced that the *Faller* case stands for the broad proposition that the general duty to exercise ordinary care to keep leased property in good order includes the duty to exercise ordinary care to protect the property against criminal acts by third-persons. A co-tenant occupies a far different status than an uninvited arsonist.

Defendant Neff's actions and/or omissions were not the proximate cause of the destruction of the premises. Generally, there is not duty to control the conduct of another so as to prevent him or her from harming another. *Littleton v. Good Samaritan Hospital & Health Center*, 39 Ohio St.3d 86, 92, 529 N.E.2d 449 (1988). In *Taylor v. Webster*, 12 Ohio St.2d 53, 231 N.E.2d 870 (1967), the Ohio Supreme Court addressed the issue of a defendant's liability for injuries to a plaintiff caused by a third-party. The court held that:

> A rule of general acceptance is that, where the original negligence of the defendant is followed by the independent act of a third person which directly results in injurious consequences to plaintiff, defendant's earlier negligence may be found to be a proximate cause of those injurious consequences, if, according to human experience and in the natural and ordinary course of events, defendant could reasonably have foreseen that the intervening act was likely to happen.
>
> . . .
>
> Or, stating the proposition a little differently, the connection between the defendant's negligence as a proximate cause of an injury is not broken, if an intervening event is one which might in the natural and ordinary course of things be anticipated as reasonably probable, and the defendant's negligence remains an important link in the chain of causation....

*Id.* at 56, 231 N.E.2d 870 (citations omitted).

■ Moreover, the Supreme Court of Ohio has adopted the Restatement in examining the nature of liability for third-party acts:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*Federal Steel & Wire Corporation v. Ruhlin Construction Co.*, 45 Ohio St.3d 171, 543 N.E.2d 769 (1989) (quoting Section 448 of the Restatement of the Law 2d, Torts (1965)) (holding *commercial* owner of property liable for third-party vandalism where that owner was aware between 10 and 15 prior instances of vandalism). Thus, whether a defendant is liable will depend on foreseeability—whether he or she knew or should have known that the criminal conduct was a likely result of his or her negligence. *Feichtner v. City of Cleveland*, 95 Ohio App.3d 388, 396, 642 N.E.2d 657 (Ct.App.1994) (requiring demonstration of circumstances that are "somewhat overwhelming" to establish that third-party criminal activity was in fact foreseeable).

■ Assuming that the apartment was destroyed by a fire that was started at the hand of an arsonist, the destruction of the premises in this case was proximately caused by the criminal and unforeseeable act of a third-person, and not caused by the negligence of Defendant Neff. The act of arson which resulted in the damage to the apartment was a criminal act which Defendant Neff could not anticipate; it was also simply not the reasonably probable consequence of Neff's allegedly negligent behavior in allegedly failing to lock her back door completely. A locked door protects the property from theft; it does not protect the premises from arson. Moreover, post-fire identification of an unhappy child who threatened to "torch" Defendant Neff without more specific evidence that the boy actually committed the offense, and that Defendant Neff knew of his specific intention to enter her property to start a fire, do not

make the intervening alleged arson the probable result of Defendant Neff's purported negligence. Plaintiff had an obligation to set forth specific evidence showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(E).[7] Having failed to so respond, summary judgment on this Count is appropriate.

### B.) *Breach of Contract*

 Aetna asserts that Ms. Neff breached her lease contract and was negligent in failing to maintain and protect the property. In its Motion for Summary Judgment, Defendant Neff argues that, to the extent Aetna seeks to hold her liable for the damages caused by the criminal acts of a third-party, the lease covenants are inconsistent with the Landlord Tenant Act and hence are void as they have attempted here to be applied.

Paragraph 3 of the Rental Agreement provides that "[t]he Resident ... shall quit and surrender the premises at the end of the term in as good condition as when received, reasonable wear and tear excepted." (Plaintiff's Mem. in Opp., Exh. A.)[8]

This Court has already concluded that the losses in this case did not result from any negligent acts by Defendant Neff. As a result, a rule of law that a defendant could contract to become liable for the unanticipated criminal acts of third-persons would be inconsistent with the statutory scheme of the Ohio Revised Code, Chapter 5321. Plainly, Defendant Neff did not so contract here. Accordingly, any interpretation to the contrary, including the method Aetna seeks to apply in the instant case, is unenforceable. *See,* O.R.C. § 5321.06; *Dorsey,* 46 Ohio St. App.3d at 68. Summary Judgment therefore is appropriate on the breach of contract claim.

### IV.

For the foregoing reasons, Defendant Neff's Motion for Summary Judgment (Doc. 27) is **GRANTED**. The Court's Order Setting Trial Date is hereby **VACATED**.

**IT IS SO ORDERED.**

---

7. Rule 56(E) provides in full:
   When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
   Fed.R.Civ.P. 56(E).

8. Paragraph 9 further provides that "[i]f the apartment is damaged by fire ... Agent/Owner shall repair it within a reasonable time ..." (Plaintiff's Mem. in Opp., Exh. A.) Paragraph 15 makes clear that the "Resident shall be responsible for obtaining fire, extended coverage and liability insurance with respect to apartment contents." (Plaintiff's Mem. in Opp., Exh. A.) These provisions of the Rental Agreement make clear that Ms. Neff did not contract to insure against all possible fire damage to the premises or the apartment complex.